(No. 11295.—Reversed and remanded.)

PETER E. KEARNEY *et al.* Appellees, *vs.* LLOYD G. KIRKLAND *et al.* Appellants.

*Opinion filed June 21, 1917—Rehearing denied October 4, 1917.*

1. BUILDING LINES—*where the building line restriction shown by the plat is modified by subsequent deeds, the deeds will govern.* Where the owner of a tract of land plats the same and indicates a building line on the plat on certain of the lots but by his deeds conveying the lots he limits the life of the building line restriction to fifteen years, the deeds, and not the plat, will govern.

2. SAME—*when grantor is estopped by his deed from insisting that previous agreement as to building line is not valid.* Where a grantor states in the deed that the conveyance is subject to a previous agreement as to a building line restriction the covenants and conditions of the agreement become a part of the deed, and the grantor is estopped to thereafter insist that the agreement was not valid and binding upon him as to the land described in the deed.

3. PLEADING—*when cross-bill is not germane to original bill.* Where the original bill is for partition and asks that a building line restriction be removed as a cloud upon the title of the property, a cross-bill filed by certain of the defendants asking that the restriction be removed as a cloud on the title to their lots which are not involved in the litigation is not germane to the original bill and is open to demurrer.

4. CONSTRUCTION—*in ascertaining intention of maker of written instrument courts are not confined to literal construction of the language.* In construing written instruments the intention of the parties as gathered from a cosideration of the whole instrument is to be ascertained and given effect if this can be 'done without violating some established rule of law or public policy, and the courts are not confined to the literal construction of the language used.

APPEAL from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

JOHN B. HEINEMANN, for appellants.

RYAN, CONDON & LIVINGSTON, and SONNENSCHEIN, BERKSON & FISHELL, (THOS. J. CONDON, IRVIN I. LIVINGSTON, and MAURICE BERKSON, of counsel,) for appellees.

Mr. JUSTICE CRAIG delivered the opinion of the court:

On August 25, 1890, Charles E. Simmons as owner, and Charles C. Chase as trustee under a certain trust deed, laid out and platted what is known as Birchwood Beach addition to the city of Chicago. The addition is located near the north end of the city limits and embraces nineteen blocks situated between the old Indian boundary line on the north, Kenilworth avenue on the south, Lake Michigan on the east and the right of way of the Chicago, Milwaukee and St. Paul Railway Company on the west, with the exception of blocks 18 and 19, which are west of the right of way of the railroad. The lots in controversy are located along Sheridan road, which runs in a northwesterly direction through the addition between blocks 1, 5, 6, 11, 12, 15 and 16 on the east and blocks 2, 4, 7, 10, 13, 14 and 17 on the west, and is the first street west of Lake Michigan. The first street on the north is Howard avenue, which runs east and west south of blocks 1 and 2, which are situated in the extreme northeasterly part of the addition. Blocks 3, 4 and 5 are immediately south of Howard avenue. The next street south of Howard avenue is Birchwood avenue, which

runs east and west south of blocks 4 and 5. The next is Fargo avenue, which runs east and west south of blocks 6, 7 and 8. The next is Jarvis avenue, the next Sherwin avenue, the next Chase avenue, and the last is Kenilworth avenue, which is the south boundary line of the addition. The plat as filed for record and recorded in the recorder's office of Cook county shows a building line thirty feet west of the lot line on each of the lots in blocks west of and abutting Sheridan road. No building line is indicated on any of the blocks lying to the east of Sheridan road. A building line is also shown fifteen feet from the lot line on each lot in the blocks facing upon the streets running east and west. In addition to the above matters shown on the plat it appears that on September 3, 1890, Simmons and wife conveyed block 4 to Warren H. Freeman by warranty deed, containing, among other things, a condition that for fifteen years from its date the lots should be used for residence purposes, only, and should not be used or built upon in any manner or for any purpose tending to render the same injurious or offensive to a residence neighborhood, and "that any building erected on said lots during said fifteen years shall be, when erected, of a value not less than $4000, and that no structure of any sort shall be placed or permitted between the front line of said lot and the building erected on said lot or between said front line and the thirty-foot building line, all of which conditions are to be observed and kept by the grantees, their heirs and assigns," and upon their failure to do so the property was to revert to the grantor and his heirs. Thereafter, and prior to January 29, 1892, Simmons and wife conveyed to various grantees the other blocks which comprised this addition, subject to substantially the same conditions set forth in the Freeman deed.

On April 1, 1908, a certain instrument purporting to be an agreement between Ernest Heldmaier, Christene Bruse, Edward Charles Bruse, Carl Henry Bruse and Clara L. Bruse, as widow and heirs-at-law of Charles Bruse, de-

ceased, and Lizzie J. Wilson, Isabella Matson and John Anderson, who constituted all of the owners of lots fronting on both sides of Sheridan road between Birchwood avenue and Howard avenue, was signed and acknowledged by all of the parties above named except the Bruses and filed for record and recorded in the recorder's office of Cook county on March 5, 1910. This instrument recites that it is the mutual and common desire of the parties to enter into an agreement restricting the manner in which the real estate should be used, the character of the buildings to be erected thereon, and to create an easement which should be to the benefit of all of the parties thereto, their heirs, successors and assigns, and that in consideration of the mutual covenants therein contained, and other good and valuable considerations, the parties thereto covenant and agree to and with each other that they will not, nor will any or either of them, and that their heirs, executors, administrators, successors and assigns shall not, nor either or any of them, for a period of twenty years from the date of such instrument, erect or permit to be erected upon the real estate therein described, or any part of it, any building within thirty feet of the front lot line of said real estate, or any building on said real estate, or any part thereof, commonly known as a flat or tenement building or apartment house, or any other building except single private dwelling houses, and a stable or garage at or near the alley line of said real estate. The Bruses, who were the owners of the south half of lot 2 and all of lot 3 in block 4 of the addition, never signed the agreement.

It appears that at the time this agreement was filed for record the affidavit of Lloyd G. Kirkland was filed with the same, which affidavit set forth that in the month of February, 1909, a suit was pending in the circuit court of Cook county involving the north fifty feet of lot 2 in block 6 in this addition, for the purpose of enforcing a similar agreement and preventing the erection thereon of a

flat-building or apartment house on the north fifty feet of that lot in violation of the agreement; that a decree had been rendered in that cause holding the agreement not binding on the owners of such property; that an appeal was contemplated to the Appellate Court, in which an appeal bond of $5000 was required; that the parties to that litigation went to Edward Charles Bruse, who represented the Bruses' property, and he agreed with them that if they would execute the appeal bond he would undertake and cause the agreement to be executed by the holders of the legal title of the Bruses' property within sixty days after said parties should execute said appeal bond; that pursuant to such agreement they executed the appeal bond and eventually caused the property involved in that litigation to be purchased at a loss to prevent the building of an apartment house thereon, and that by reason thereof the Bruses were bound by all the conditions of that agreement. At the time this alleged agreement was made Edward C. Bruse had no interest in the property mentioned therein, he having conveyed all of his right, title and interest in the same to his mother, Christene Bruse, on January 4, 1908. It further appears that Ernest Heldmaier acquired title to certain portions of blocks 6 and 7 as well as to the lots in question, and on June 24, 1914, while he was still the owner of such property, served notice upon all the parties to said agreement of April 1, 1908, including the Bruses, that by reason of the failure of the latter to enter into such agreement he had elected to withdraw his assent to the proposed contract and that he had canceled and revoked the same in so far as he was concerned. Thereafter, on July 15, 1914, he conveyed lot 1 and the north half of lot 2 in block 4 to Peter E. Kearney and Helen M. Kearney, his wife, as joint tenants, the deed providing that the conveyance was made subject, among other things, "to building line restrictions and building restrictions of record, if any such restrictions were in force and effect at the date hereof," which deed

was duly acknowledged and thereafter filed for record and recorded in the recorder's office of Cook·county on July 17, 1914. On September 8, 1914, Peter E. Kearney filed his bill in partition in the circuit court of Cook county against his wife, Helen M. Kearney, for partition of the lots in question, and also asked to have the alleged building restriction agreement of April 1, 1908, recorded on March 5, 1910, removed as a cloud on the title to their property.

In addition to setting forth the facts as above stated, the bill further charges that the alleged contract never became binding on Heldmaier by reason of the failure of the Bruses to sign it and the notices sent out by him on June 24, 1914, of his withdrawal from the contract; that said building line restriction established by the deed from Simmons to Freeman of September 3, 1890, expired by its own limitation on September 3, 1905, and that the same had never been observed but had been generally abandoned and disregarded by the owners of property in that subdivision, both with respect to character of the buildings constructed and the restriction established by the building line. The bill made defendants, as parties claiming some interest in the property by virtue of the contract of April 1, 1908, the several persons owning lots in blocks 4, 5, 6 and 7 fronting on Sheridan road. All of these parties were defaulted except Lloyd G. Kirkland, Adelia E. Wright, Amelia M. Apfel, John H. O'Heron, Elizabeth C. Peterson, Philip J. McKenna, Grace W. Depue, Oscar Depue, Joseph A. Roach, William J. Crane and Johanna T. Crane, who answered the bill claiming the benefit of the restriction agreement, and Edward Charles, Henry and Clara Bruse, who filed disclaimers but subsequently withdrew the same and filed an answer and a cross-bill setting up that they were the owners of the south half of lot 2 and all of lot 3 in block 4, and asked to have the alleged restriction agreement recorded on March 5, 1910, removed as a cloud on their title to those lots. Appellants demurred to the cross-bill, which demurrer

was overruled, and they subsequently filed an answer claiming their rights substantially as set forth in their answers to the original bill, and also alleged that the cross-bill was not germane to the original bill. The other defendants also answered the cross-bill. Replications were filed to the answers to the respective bills, and the cause was referred to a master, who made his report finding the facts substantially as above set forth, and that appellees were entitled to partition and that the alleged agreement in question should be canceled and removed as a cloud on the title to appellees' property. Objections were filed to the master's report, which were overruled and ordered to stand as exceptions in the circuit court. On the hearing in that court all exceptions were overruled and a decree rendered approving and confirming the master's report, decreeing the restrictive agreement of April 1, 1908, no longer binding and ordering it canceled and removed as a cloud on the title of appellees' property; and appointing commissioners to make partition of the property in question. From this decree appellants, Lloyd G. Kirkland, John H. O'Heron, Grace W. Depue, Oscar B. Depue, Joseph A. Roach, Johanna T. Crane and William J. Crane, have prosecuted their appeal to this court.

The only part of the decree called in question by the assignment of errors is that granting relief to appellees as prayed in the original and cross-bills as to the building line and building line restriction agreement.

Appellants insist that the building line restriction shown on the plat was not limited by the deed from Simmons to Freeman to fifteen years, but is, in effect, perpetual. Appellees insist that the extent and duration of this restriction are established and fixed by the latter deed. Nothing appears on the plat to indicate the extent of the restriction indicated thereon or the period of time for which it is to endure. The deed made by Simmons to Freeman shortly after the plat was recorded provides that for fifteen years from its date the premises should be used for residence pur-

poses, only, and not for any purpose rendering the same offensive or injurious to a residential neighborhood. It further provides "that any building erected on said lot during said fifteen years shall be, when erected, of a value of not less than $4000, and that no structure of any sort shall be placed or permitted between the front line of said lot and the building erected on said lot or between said front line and the thirty-foot building line." Other deeds executed by him on the same and subsequent days contain the same, or substantially the same, restrictions. In none of these deeds is any reference made to the dotted lines on the plat indicating a building line on the lots fronting on the east and west streets. In the deeds made by him to the lots in the blocks on the east side of Sheridan road substantially the same restriction is imposed, although the plat contains no dotted lines indicating a building line on any of the lots or blocks on that side of the street. In our opinion these conveyances clearly indicate that it was the grantor's intention to fix the extent and duration of the building line restriction by the deeds subsequently made and not by the plat, or if by the latter, that he abandoned the building line indicated thereon before any conveyances were made by him. In either event, the building line restriction as fixed and established by the deeds must govern. Where, by deed subsequently executed, the grantor modifies or limits the scope of the building line restriction shown on a plat, the modification made in such restriction by the subsequent deed will govern. *Loomis* v. *Collins*, 272 Ill. 221; *Eckhart* v. *Irons*, 128 id. 568.

Appellants further argue that the fifteen-year limitation established by this deed extends only to the first two clauses,—those providing as to the character of the buildings that may be erected and that no building should be permitted between the front lot line and the building erected thereon,—and not to the later clause containing the building line restriction. This contention is based solely on a

strict grammatical construction of the language of the conditions in the deed and not upon any supposed intention of the grantor shown by the language he has used in creating such conditions. It is fundamental that in construing contracts, deeds, wills or other written instruments, the intention of the parties as gathered from a consideration of the whole instrument is to be ascertained and given effect if this can be done without violating some established rule of law or public policy, (*Farnam* v. *Thompkins,* 171 Ill. 519,) and that in ascertaining and giving effect to this intention the courts are not confined to the strict and literal construction of the language used, when to do so will frustrate the intention of the parties as gathered from the four corners of the instrument. When recourse is had to the various provisions of the deed in question it is manifest that what the grantor had in mind was the establishing of such restrictions for a limited time, so as to make the property desirable for residence purposes, only. This he hoped to accomplish by placing restrictions as to the minimum value of the buildings to be erected thereon and their location with respect to the front line of the lots. This limitation was not intended to be of indefinite duration but was to be limited to fifteen years from the date of such deed or instrument, after which time the grantee was to be at liberty to use his property as he saw fit, freed of the restrictions imposed by such deed. Reasonable as such restrictions would be on property intended for residence purposes they are wholly unsuited for property intended for business purposes and of a character not to be imposed upon property intended for such purpose. Construing this deed in the light of the manifest intention of the grantor not to fetter the free use of the property beyond the period of fifteen years, it does not seem reasonable or probable that he would have imposed a perpetual building line restriction upon it, and thus render it unfit for anything but residence purposes even after the express restriction as to such use had expired

by its own limitation. This, also, is the construction placed upon the restriction by the various purchasers of lots in the subdivision. This is evidenced by their efforts to induce the several property owners to enter into contracts similar to that of April 1, 1908, by which the restriction would be extended for an additional period of twenty years. That agreement, after setting forth the property to be affected· by it and by whom owned, provides that the parties thereto shall not, "for a period of twenty years from the date of such contract, erect or permit to be erected upon the real estate therein described any building within thirty feet of the front lot line of said real estate, or any building on said real estate, or any part thereof, commonly known as a flat or tenement building or apartment house, or any other building whatever except only a single private dwelling house, and a stable or garage at or near the alley line of said real estate." The language of the agreement shows quite clearly that the construction which we have placed upon this restriction is the interpretation generally placed upon it by all parties interested in the property affected by it, and is the one which should be adopted as expressive of the true intent and meaning of the restrictions in such deeds. For the reason given we think the circuit court did not err in holding the restrictions, both as to character of the building and the building line, expired by their own limitation within fifteen years from the date of such deeds.

Appellants insist that Heldmaier and the appellees, his grantees with notice, are estopped by his execution of the agreement on April 1, 1908, and acquiescence in its subsequent recording on March 5, 1910, and his subsequent deed referring thereto, from insisting that the provisions of that agreement are not valid and binding upon him and his grantees. On the other hand, appellees insist that this agreement never became binding by reason of the failure of the Bruses to execute it, and that Heldmaier had a right to withdraw therefrom, and did so by the notice served on the

other parties thereto on June 24, 1914. While the evidence shows that a number of agreements similar to this one were circulated among the various lot owners in the subdivision, and that it was the hope of the originators of this scheme to get all of the lot owners in the subdivision to sign said agreement, there is nothing in the agreement itself to show this intention or that its binding force and effect were in any way to be dependent upon the execution of the other similar agreements, or even the execution of this agreement by all of the parties named in the caption thereof. It further appears that Heldmaier interested himself in the efforts to have the provisions of another similar agreement enforced against the owners of the north fifty feet of lot 2 in block 6; that he contributed to the expense of such litigation and was one of the signers of the appeal bond when it was proposed to carry the suit to the Appellate Court on appeal; that he knew of the recording of this agreement by Kirkland on March 5, 1910, and made no protest against such action, and in various ways recognized the validity and binding force and effect of such agreement. He conveyed lot 1, except the north 29.44 feet thereof, in block 7, to Joseph A. Roach on October 24, 1912. His deed specifically states that the conveyance is made subject, among other things, to the thirty-foot building line and the covenants, conditions and restrictions contained in the agreement dated April 1, 1908, and recorded March 5, 1910, as document No. 4,516,039. By such reference to the contract Heldmaier thereby recognized this agreement and made its covenants and conditions as much a part of the Roach deed as if the same had been embodied in and made a part of the deed itself. (*Ingraham* v. *Brown,* 231 Ill. 256; *Smith* v. *Young,* 160 id. 163.) It was also such a recognition of the validity of this agreement, as between Heldmaier and Roach, as to estop the former from insisting that the agreement was not valid and binding upon him as to the lots and blocks described in that instrument. (*Ingraham* v. *Brown,*

*supra.*) In *Ericksen* v. *Tapert,* 172 Mich. 457, (138 N. W. Rep. 330,) owners of property who described themselves as "owners of one or more lots in the Chandler avenue subdivision, described as lots 50 to 74, both inclusive, situate on the north side of said Chandler avenue, and also lots numbered from 25 to 49, both inclusive, situate on the south side of Chandler avenue," entered into an agreement not to erect any other than a single dwelling house on each lot. It was held that it was not necessary that the owners of all the lots sign the agreement before it should become binding on those who did sign. The court said (p. 461): "Nowhere in the contract does it appear that the owners of all of the lots described (numbered from 25 to 74) must sign the contract before it shall become operative or binding upon those who did sign. Moreover, the testimony in the case clearly shows that when the contract was circulated among the lot owners, those who signed were advised that it was not thought possible to secure the signatures of all those who owned lots in the specified area. We think the mutual agreement to observe the restriction was an adequate consideration passing from each signer to the other signers, and likewise that it was valuable,—clearly not so valuable as if all had signed, yet having a tendency to raise and maintain the character of Chandler avenue as a residence street." The same thing might be said of the contract in this case, except that it is not shown that when the contract was circulated for signatures it was represented that all of the parties interested would not sign. On the contrary, Edward C. Bruse had promised to sign but repudiated such promise and refused to sign the written agreement when it was put up to him, and it was undoubtedly the expectation that all would sign. However, Heldmaier gave his assent to the recording of the contract when advised by Kirkland that the Bruses had not signed, and thereby waived any understanding, even if there was such understanding or such could be implied from the terms of

the contract, that all should sign to make the contract valid and binding on everyone. Appellees purchased with notice of the agreement and took title to the premises in controversy subject to the conditions and restrictions established by such instrument in so far as they were still valid and binding upon Heldmaier. It was therefore error to decree its removal as a cloud upon appellees' title unless such facts were shown as to establish its waiver or abandonment by those entitled to enforce its provisions.

On this proposition appellees insist that there has been such a general disregard of the building line restriction established by the plat and the deed from Simmons to Freeman, and acquiescence in such disregard of the same, as to show an abandonment and waiver by appellants of their right to enforce the same; also that the character of the neighborhood has so changed in the last few years as to make the building line restriction inapplicable. The evidence relied upon to establish these facts referred to other property than that described in the agreement of April 1, 1908, and to a time prior to the re-affirmance of that agreement in the deed to Roach. It therefore has no material bearing upon the rights of appellants with respect to that agreement and the property involved in this appeal. We find no evidence in the record since the deed from Heldmaier to Roach was executed that would warrant us in holding that there had been such a disregard of the restrictions established by such instrument as re-affirmed by that deed as shows an abandonment or waiver by appellants of their rights to enforce such agreement. The same is true as to the evidence of the change in the character and conditions in the neighborhood since that deed was executed. We therefore hold this contention of the appellees not well taken.

Appellants also insist that it was error to grant to appellees the Bruses the relief asked by them in their cross-bill. We think this assignment of error well taken. The

primary object of the original bill in this case was to secure partition between appellees Peter E. Kearney and Helen M. Kearney of lot 1 and the south half of lot 2, in block 4, of this subdivision. It involved no other property. The other relief asked by way of removing the building line restriction agreement as a cloud on their title was only incident to the main relief sought by the bill. Appellees Christene, Carl H. and Clara Bruse claimed no interest in this property or rights under such agreement, nor did they seek by their cross-bill to establish any right in the property involved in the original bill. The property which they owned and in which they asked to have the court establish their rights was the north half of lot 2 and all of lot 3 in that block, which was not involved, either directly or indirectly, in this litigation. The relief, therefore, sought by the cross-bill was not germane to that sought by the original bill, and for that reason the demurrer to the cross-bill should have been sustained and the bill dismissed. For this reason we have expressed no opinion as to whether or not the provisions of the agreement of April 1, 1908, are binding upon the Bruses. It was unnecessary to do so in order to decide the questions properly before us on this record.

For the reasons given, the decree of the circuit court must be reversed and the cause remanded to that court, with directions to modify the decree entered so as to direct partition of the property in question between the appellants Peter E. and Helen M. Kearney, subject to the provisions of the building line restriction as established by the agreement between Heldmaier and the other parties thereto, dated April 1, 1908, and recorded on March 5, 1910, and for such other proceedings in the premises as may be necessary to carry out the views expressed in this opinion.

*Reversed and remanded, with directions.*