(No. 17069.—

PAUL C. BEAR, Appellant, *vs.* THE MILLIKIN TRUST COM-
PANY *et al.* Appellees.

*Opinion filed October 19, 1929.*

McMILLEN & McMILLEN, HERRICK & HERRICK, and HORACE B. GARMAN, for appellant.

MILLS BROS. & ARMSTRONG, and VAIL, POGUE & ALLEN, for appellee the Millikin Trust Company; E. J. HAWBAKER, guardian *ad litem,* for minor appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

Paul C. Bear appeals from a decree of the circuit court of Piatt county sustaining a demurrer to a bill in equity for the partition of certain land formerly belonging to Carlton J. Bear and for the cancellation of a deed executed by Bear in his lifetime to the Millikin Trust Company.

Carlton J. Bear died intestate on July 28, 1919, leaving Bertha R. Bear, his wife, surviving, and his heirs were his four sons, Paul C., Lee M., Lloyd J. and Ralph W., and his daughter, Grace M. Martin. The widow, Bertha R. Bear, died on July 1, 1924, leaving a will. Paul C. Bear, Lee M. Bear and Grace M. Martin, three of the heirs of Carlton J. Bear, filed a bill to the October term, 1924, of the circuit court of Piatt county in which they alleged Carlton J. Bear's ownership, in his lifetime, of about 1500 acres of land in Piatt county, (describing it,) and averred that by his death intestate they and their brothers, Lloyd J. and Ralph W. Bear, each became seized of an undivided one-fifth of the premises. The bill further averred that on April 4, 1917, Carlton J. Bear, then being of the age of sixty-one years, together with his wife, Bertha R. Bear, executed a certain pretended indenture of trust, by which he undertook to transfer and convey to the Millikin Trust Company the premises, together with certain shares of the capital stock of certain corporations which were named and the proceeds of the sale of certain land then owned by the grantor in the States of Mississippi and Arkansas; that the instrument was recorded in the office of the recorder of Piatt county, and a copy of it was attached to and made a part of the bill. The bill further represented that the instrument was without consideration, was an attempt by the grantor to make a testamentary disposition of the property described in it without complying with the laws of the State applicable to wills; that it was not signed, executed, attested and published as a will, in compliance with law;

that it is vague, uncertain, ambiguous, and for other good reasons appearing from an examination of it is void; that it attempts to create estates which will not vest within the period allowed by law and violate the rule against perpetuities; that it is a cloud upon the title of the complainants and their tenants in common and ought therefore to be set aside.

The instrument is in form a deed conveying real and personal property to the Millikin Trust Company in trust, the first paragraph of which conveys and describes the property. The next three paragraphs fix the powers, duties and compensation of the trustee and reserve to the grantor the right at any time during his life, upon notice to the trustee, to vote the shares of stock conveyed by the instrument. Paragraph 5 requires the net income from the real estate to be paid to the persons entitled thereto semiannually, on the first days of March and September, the entire net income from the trust estate to be paid to the grantor during his life. Paragraph 6 provides that after the death of the grantor the net income from the shares of stock transferred to the trustee shall be paid to his widow during her life, in addition to the provisions for her made in other clauses of the instrument, and the net annual income from the remainder of the trust estate shall be divided equally among the widow and the grantor's children, (naming them,) share and share alike, or among such of them as shall then be living at the time of the semiannual income payments during the life of the widow. Paragraph 7 provides that in case of the death of either of the children during the life of the widow and after the death of the grantor, leaving no wife, husband or descendant surviving, then the net semi-annual income shall during the life of the widow be paid to her and the then surviving children of the grantor, share and share alike. Paragraph 8 provides that after the death of the grantor, in case of the death of either or any of his sons or his daugh-

ter, Grace M. Martin, if such deceased son or deceased daughter shall leave a wife or husband surviving, such surviving wife or husband shall receive during the life of the widow the share of the semi-annual income said son, sons or daughter, respectively, would have received; and in the event of the death of such surviving wives of a son or sons, or husband of the daughter of the grantor, after his death and during the life of his widow, the surviving child or children, or descendants of such child or children, *per stirpes,* shall receive the share of the semi-annual net income such deceased widow of the son or sons, or deceased husband of the daughter, would have received, if living. Paragraph 9 provides that if the grantor should survive his wife, then after his death the net income from all sources of the trust estate should be paid to the sons and daughter of the grantor then living, during their respective lives, except as otherwise provided, share and share alike. Paragraph 10 provides that in case of the death of either or any of said sons or daughter of the grantor, whether before or after the death of the grantor, and in case Bertha R. Bear should die during the life of the grantor, and such deceased son, sons or daughter leave no wife, husband, child, children or descendants surviving them, the net semi-annual income shall be paid, share and share alike, to the surviving children of the grantor during their respective lives, except as otherwise provided. Paragraph 11 provides that after the death of the grantor, should he survive his wife, then, in case either of his said children shall have died before the death of the grantor, or shall have died after his death and shall have left a widow or husband surviving, such surviving widow and surviving husband also surviving the grantor, shall receive the semi-annual net income their respective husband or wife would have received if living, but not for a longer period than the period of the trust nor for a longer period than the life of the last surviving child of the grantor, and not for

a longer period than the time of the respective distribution of the trust estate or distribution of the shares such surviving wife or husband represents. Should such surviving widow of a son or husband of the daughter of the grantor die, and there be no child, children or descendants of such son, sons or daughter of the grantor surviving them, such income shall thereafter be distributed among the others entitled to the semi-annual income, share and share alike. If the grantor survives his wife, then after his death, in case of the death of a surviving widow of a deceased son of the grantor and in case of the death of a surviving husband of the deceased daughter of the grantor, the share of the deceased widow of any of the sons and the share of the deceased husband of the deceased daughter of the grantor, the semi-annual net income that would have been paid to the son or daughter and then to the surviving widow or husband shall be paid to the child, children or descendants of a child or children *per stirpes* of such son or sons of the grantor having so died, and to the child, children or descendants of such deceased daughter *per stirpes* whose surviving husband so died; provided, in such case, that if there is no child or descendant of a deceased son of the grantor, which son's widow so died, and there is no child or descendant of the deceased daughter of the grantor whose surviving husband so died, then the share or shares of the semi-annual income of the trust estate that would have gone to such sons of the grantor or to such daughter and then to the surviving widow or husband, shall be paid to the then surviving children of the grantor, share and share alike, or to those entitled to share in the net semi-annual income elsewhere provided, according to the class, whether direct or *per stirpes*. Paragraph 12 provides that if the surviving widow of a son or the surviving husband of the daughter of the grantor should marry again, then the income that would have been paid to him or her under any of the provisions of the trust

shall immediately cease and be paid to the surviving children of such deceased son or daughter, or if there is no surviving child or descendant of such son or daughter, then the income such surviving widow or surviving husband would have received to be distributed among the other children of the grantor and his wife. By paragraph 13 the grantor reserves to himself the right, during his life, to make a division of his Piatt county real estate among his children, such division, when made in writing and filed with the trustee, to control the trustee in making final distribution and conveyance of the estate in kind. Should the grantor avail himself of this privilege and reservation, the trustee shall thereafter, in leasing lands to the sons and daughter, if they so desire, lease to each the respective allotment that the grantor shall have made. Until such time as the grantor shall make such allotment the trustee shall give preference to the sons of the grantor, leasing to each the premises upon which each resided at the date of the deed, and should the son-in-law, Orville Martin, and his wife, the grantor's daughter, desire to lease the land upon which Ed Clark was residing as a tenant at the date of the deed the trustee shall permit it; but it was further provided that should any of the sons or son-in-law and daughter, while tenants, be derelict and neglectful in farming the land leased by such ones so as to materially lessen the income from the trust estate, the trustee might, in its discretion, lease such portion to some good tenant, dispossessing such sons, son-in-law and daughter. Paragraphs 14 to 19, inclusive, are as follows:

"(14) Should the said Bertha R. Bear, wife of said Carlton J. Bear, survive him, then two years after the death of said Bertha R. Bear, the trustee herein shall make allotment and division of said Piatt county real estate herein conveyed in trust, among the then surviving children or descendants of the said Carlton J. Bear, provided said division shall not be made earlier than twelve years after

the death of the said Carlton J. Bear nor earlier than two years after the death of said Bertha R. Bear, and conveyances shall be made by the trustee to the respective persons entitled thereto, effective on the first day of March following the date requiring the division to be made hereinabove provided.

"(15) Said Piatt county real estate shall be divided into as many equal parts, quality and quantity relatively considered, as there are sons and daughters and surviving widow or widows of a son or sons and surviving husband of a daughter of the said Carlton J. Bear, at that time living, and if a son or sons or daughter of said Carlton J. Bear shall have died prior to that time and a widow without children of such a son or the husband without children of said daughter shall be living, the estate to be conveyed to such widow of such son or to such husband of such deceased daughter, so without child or children of a son or daughter of said Carlton J. Bear, shall be a life estate for her or his natural life and so long only as she or he shall remain unmarried, and in the event of such widow or such surviving husband marrying again, such life estate interest shall immediately cease and be of no effect.

"(16) In the case last stated, where the son of said Carlton J. Bear is survived by a widow and no child or children, or the daughter of said Carlton J. Bear is survived by a husband and no child or children, the fee in each interest shall be conveyed and distributed equally among the remaining children of the said Carlton J. Bear, quality and quantity relatively considered, subject to the life estate created for such a widow or son without child or children or husband of the daughter without child or children.

"(17) At such date for the allotment or division, if the son or sons or daughter of the said Carlton J. Bear shall be survived by a widow and child or children or husband and child or children, the estate that would have gone

to such deceased son or deceased daughter had they been living, shall descend and be conveyed by the trustee herein to the child and children or descendants of a child or children of such a deceased son or deceased daughter of said Carlton J. Bear, subject, however, to the life estate to widow of such son or husband of such daughter of said Carlton J. Bear, which life estates shall terminate and cease on re-marriage.

"(18) It is, however, expressly provided, and the controlling feature that will prevent, and shall prevent, the trustee from conveying, on the date, and at the time of allotment and division in kind, of the distributable share of a son or a daughter to a son or daughter, is that if a son, sons or daughter of said Carlton J. Bear shall be in debt on the date of distribution and shall have so conducted his or her business, or that from his or her habits of business and living, that said trustee shall, in the exercise of its best judgment, deem it unsafe to put the fee and the principal of the share of said trust estate in the hands and unlimited control of the beneficiaries, to-wit, a son, daughter, or descendants of son or daughter, widow of a son, husband of a daughter, as in this trust deed directed, then, as to that son or that daughter, or such descendants, such widow of a son, such husband of the daughter, said trustee shall continue such share of the estate in trust, giving to such son, sons, daughter, descendants, widow of son, sons, husband of the daughter, only the semi-annual net income from the allotted portion of the land in said Piatt county, and such trustee shall not give to such son, sons, daughter, descendants, widow of son, sons, husband of such daughter, their division in the personal property held by said trustee in said trust estate, but shall distribute and convey the share of the real estate and personal estate so continued in trust after the death of the last surviving child of said Carlton J. Bear to the child, children or descendants of a child or children, of such son, sons, or daughter of said Carlton

J. Bear, *per stirpes,* which son's, sons' or daughter's share was so held and continued in the trust estate beyond the period of allotment and division because of debt and improvidence.

"(19) It is expressly provided that the income to which said Bertha R. Bear, Paul C. Bear, Lee M. Bear, Ralph W. Bear, Lloyd J. Bear and Grace M. Martin, and to those who may succeed to the payment from either of said persons last named, shall become entitled hereunder, shall not be subject to her, his or their respective debts, nor to sales by him, her or them respectively or collectively, nor shall any income be paid out upon any assignment or receipt given by her, him or them, respectively or collectively, before such income becomes due and payable, but said trustee shall be discharged from accounting for income properly payable to said Bertha R. Bear, Paul C. Bear, Lee M. Bear, Ralph W. Bear, Lloyd J. Bear and Grace M. Martin, and to those who may succeed to the payment from either of said persons last named, when by paying the same to the said Bertha R. Bear, Paul C. Bear, Lee M. Bear, Ralph W. Bear, Lloyd J. Bear and Grace M. Martin and to those who may succeed to the payment from either of said persons last named, respectively, in proper person, or upon her, his or their respective receipts, given as or after such income becomes due and payable and to the legal guardian of such of them as are minors or the conservator of such of them as have a conservator."

Paragraph 20 provides for the resignation of the trustee and the appointment of its successor. Paragraph 21 reserved to the grantor the right, by will or deed, to revoke the deed in whole or in part or change and alter any of the trusts created by it. Paragraph 22 directs that at the time of division the trustee shall distribute the personal estate to such persons, only, as are entitled to receive the fee in the Piatt county real estate, in the same proportions as the fee of the real estate is divided. Paragraph 23 di-

rects the trustee to pay the grantor's debts after his death. Paragraph 24 directs the trustee, after the death of the grantor, to pay immediately to his widow and children, (naming them,) or the surviving widow or surviving husband of either of the said children, the sum of $500. Paragraph 25 directs the trustee to pay the taxes, assessments and expenses on the grantor's real estate in other States if such real estate does not produce revenue sufficient to pay the taxes. Paragraph 26 provides that in case of the absence of a son from his wife and children, or if a son should be incapacitated by sickness or otherwise from providing for his family, it is in the discretion of the trustee to pay the income of such son in the necessary support and comfort of the wife and children of such son during such absence or incapacity. The following is paragraph 27:

"(27) It is hereby expressly provided that no interest or estate herein created, or to be hereafter conveyed by the trustee herein shall be for a longer period than the life or lives of those in being at this date, and twenty-one years thereafter, anything in any of the provisions or in the directions in the terms of this conveyance to the contrary notwithstanding; anything in any other clause in this trust deed contained and all rights and conveyances are limited by this clause."

Paragraph 28 authorizes the trustee, if at any time after the death of the grantor he is satisfied that the provisions made for the grantor's widow are not sufficient for her comfort and support, to increase the amount of income to be paid to her so as to provide her reasonable comfort and support. By paragraph 29 Bertha R. Bear, wife of the grantor, waives and releases her right of homestead and dower. Paragraph 30 is an attestation clause, and the Millikin Trust Company executes the instrument as evidencing its acceptance of the trust.

The plan of the grantor in creating the trust in question was rather simple and although covered up with a con-

siderable mass of detail is easily gathered from the deed. He desired to convey his estate to a trustee, who should assume the burden of its care, management and control. He desired to receive the whole net income himself during the remainder of his life. He therefore conveyed the property to the appellee the Millikin Trust Company, with authority to hold, control, manage, lease, collect rents, issues profits and income, pay taxes and insurance, keep in repair, replace burned or destroyed buildings and make such improvements as might be reasonably required, to collect and receive other rents, issues, profits, income and funds from the sale of lands in other States, or any interest therein, and invest the money so received in first real estate farm mortgages in Piatt or Champaign county, Illinois, having as wide latitude in the making of any investment as if it were the absolute owner of the trust estate. The grantor reserved to himself during his life the right, upon notice to the trustee, to vote the shares of stock transferred to the trustee and the right to approve the mortgage investments of the trustee. The grantor's plan included not only the management, control, investment and care of the estate during his life, but the ultimate disposition and distribution of it by the trustee after his death according to his wishes. These wishes, too, were plain enough, being complicated only by the various provisions which the grantor desired to make in view of the course, which he could not foretell, of the future events of marriage, death, birth, sickness and misfortune. His desire as to the distribution of his estate after his death and his wife's was that his five children (four sons and a daughter) should receive the income from the trust estate in equal shares until twelve years after his death, and if his widow had survived that period, then until two years after her death. If his wife survived him he directed that the net income from the shares of corporate stock transferred to the trustee should be paid to her during her life and that she

should share equally with the five children in the net annual income of the rest of the estate. It is clearly apparent from all the provisions of the deed that the intention of the grantor was, that at the expiration of twelve years after his death, and two years after his wife's, his estate should be equally divided among his five children or their descendants, and that conveyances should be made by the trustee effective on the following March 1 to the respective persons entitled, which would convey to the children of the grantor or to their successors and representatives their respective shares of the trust estate.

The reasons presented and argued by the appellant for holding the trust deed void are, its terms are so conflicting, doubtful and uncertain that the intention of the grantor cannot be ascertained; it is testamentary in character and was not executed in accordance with the Statute of Wills; it attempts to create estates which violate the rule against perpetuities; the grantor had such an estate that he could convey a fee simple, and any attempt to limit another interest after such an estate is void.

The contention that the terms of the deed are so conflicting and uncertain that the grantor's intention cannot be ascertained is based on the provision of paragraph 27 that "no interest or estate herein created, or to be hereafter conveyed by the trustee herein shall be for a longer period than the life or lives of those in being at this date, and twenty-one years thereafter, anything in any of the provisions or in the directions in the terms of this conveyance to the contrary notwithstanding; anything in any other clause in this trust deed contained and all rights and conveyances are limited by this clause."

This paragraph is, of course, inconsistent with the whole plan of the testator in the execution of the deed and the creation of the trust. The grant is sufficient to convey a fee to the grantee in the absence of paragraph 27, and it is necessary that it should convey a fee to enable the

trustee to perform the duties imposed upon it. Paragraphs 13 to 18, inclusive, direct conveyances of the fee by the trustee, and paragraph 22 directs an absolute transfer of the personal estate. It may be said that paragraph 27 is void for uncertainty. The measure it provides for the estate granted to the trustee, or any estate to be conveyed by it, is the life or lives of those in being at the date of the deed, April 4, 1917, and twenty-one years thereafter. "Those in being" includes all persons in being, and the paragraph furnishes no means of identifying any individual whose life may measure the continuance of any estate. All the parties seem to agree that the expression "the life or lives of those in being at this date" is too indefinite to measure any estate. If it referred to all lives in being on April 4, 1917, it would afford no measure of the duration of an estate, because it would be practically impossible to ascertain when the last person died. It could not refer to the particular lives of the beneficiary of each estate created, for the ultimate grant of the property in fee is to persons no one of whom may have been in existence on April 4, 1917. The final distribution is directed to be made two years after the death of Mrs. Bertha R. Bear but not until twelve years after the death of Carlton J. Bear. She died on July 1, 1924, and the division was therefore required to be made on July 1, 1926, but for the fact that, Bear having died on July 28, 1919, twelve years after his death would not expire until July 27, 1931, and the conveyances were therefore required to be made effective March 1, 1932. These conveyances, when made, are required to be made to the children of the grantor surviving on July 27, 1931, or to the widow or surviving husband of such children or to the descendants of such children. Under the provisions of the deed the children of the grantor, if they are all living on the day fixed for distribution, will be entitled to all the property in fee, disregarding paragraph 27, subject to the spendthrift trust pro-

visions of paragraph 18. If any or all of the children shall have died, then the widow or widows or surviving husband, and the issue of the children, will be entitled in accordance with the provisions of the deed in such case. When the time of division arrives some or all of the grantor's children may have died, there may be no widow or surviving husband of any deceased child and no living issue who were in existence on April 4, 1917, but the issue of the children to whom the conveyance should be made may all have been born after April 4, 1917. The measure of "the life or lives of those in being at this date, and twenty-one years thereafter" could not, therefore, apply, in such case, to the estates to be conveyed by the trustee to the ultimate takers. The whole paragraph is unintelligible when an attempt is made to apply it to the deed. It is apparently intended to limit the estates mentioned in the deed to twenty-one years after the expiration of a period whose extent is not fixed and cannot be ascertained. It may have been intended in the mind of the draughtsman, as has been suggested, to be a general restriction upon all the estates mentioned in the deed to obviate any possible violation of the rule against perpetuities, but if this was the intention it was obviously futile. It does not mention the rule and its language has no application to it, since the rule is in reference to the vesting of estates and not to their duration.

Since the paragraph is contradictory of and repugnant to all the terms of the deed and is incapable of any intelligent application to its subject matter, what effect can be given to it? A deed will, if possible, be construed so as to effect the intention of the parties as gathered from a consideration of the whole instrument, and in ascertaining the intention courts are not confined to a strict and literal construction of the language used when such construction will frustrate the intention of the parties gathered from a consideration of the whole instrument. (*Kearney* v. *Kirkland*, 279 Ill. 516.) The rule applicable to common law

deeds with a granting clause containing the word "heirs," that the first of two repugnant clauses shall prevail, does not apply to this deed, in which the estates are not so limited. In a deed in which words of inheritance are not used the entire context of the instrument may be considered, and every word used, wherever found, must, if possible, be given weight in determining the estate granted. (*Patterson* v. *McCay,* 313 Ill. 491; *Buck* v. *Garber,* 261 id. 378; *Bauman* v. *Stoller,* 235 id. 480; *Cover* v. *James,* 217 id. 309; *Welch* v. *Welch,* 183 id. 237.) The object of the construction of deeds, as well as of wills, is to ascertain the intention which the maker of the instrument has expressed, and the technical rules which applied in the construction of deeds have been greatly modified by section 13 of the Conveyance act. The rule in regard to repugnancy in deeds, as it is now understood, means no more than that the repugnant provisions are to be considered and construed together. If a reconciliation of their inconsistencies is possible so that both may stand a construction which produces that result will be adopted. No construction of a provision will be adopted which holds it repugnant to the grant, and therefore void, so as to defeat the manifest intention of the parties. On the other hand, no provision of a deed repugnant to the grant will be construed to render the deed void so as to defeat its manifest intention. When the grantor has used unnecessary and meaningless words with words of conveyance which serve only to confuse, cut down or destroy known legal estates created by proper words, the unnecessary and superfluous words may be disregarded. (*Wilson* v. *Harrold,* 288 Ill. 388.) Where the language is conflicting and susceptible of different constructions, that will be adopted which will support and give effect to the instrument, and, if it is necessary for that purpose, words of inferior import and questionable meaning will be disregarded. (*Baulos* v. *Ash,* 19 Ill. 187.) In construing a deed with refer-

ence to inconsistent clauses, attention must be given to the primary or dominant intent of the instrument. "A primary or dominant intent must prevail over a secondary intent where the two are inconsistent. The rule as to primary or dominant intent is expressed in different language by different authorities. By some the primary intent is termed the general intent, by others the paramount intent. (2 Page on Cont. sec. 1113; Clark on Cont. 290; 9 Cyc. 583; Washburn on Real Prop. sec. 2314; 2 Newlin on Deeds, sec. 840.) The effect of this rule is, that where two clauses are inconsistent they must be construed so as to give effect to the intention of the parties as collected from the whole instrument." *Morgan* v. *Morgan,* 60 W. Va. 327.

It must be presumed that the grantor intended to convey his property to the grantee, to create a trust for the benefit of his wife and children after his death. All its parts (except paragraph 27) are consistent with this intention and with no other, and that paragraph is not inconsistent with such primary, general and paramount intention. The document itself shows that great care and attention were given to its preparation. There is no doubt about the grantor's intention to create a trust or about the terms of the trust or that they were all fully set out in the deed. Paragraph 27 has no meaning in connection with this transaction. Its language imposes no limitation on any estate, for it prescribes no definite measure of duration. As applied to this instrument it is void. Being void itself and not essential to the deed it has no effect upon that instrument. While unavoidable necessity, alone, will justify the rejection of this paragraph, the intention of the instrument, when read as a whole, is so manifest that no other course can be taken.

Counsel for the appellant criticise the deed for what they regard as inconsistencies in its provisions or lack of provisions. For instance, they say that paragraph 14 provides for a division of the land only in case the wife sur-

vives the grantor and that there is no provision for a division in case the grantor survives her, and that it is apparent he did not intend a division of the land should be made in that event; that he provides for a distribution of the income during the life of his children in case he survives his wife and makes no disposition of the fee when they are all dead. But these omissions, if there are any omissions, to provide for the disposition of the fee or any part of the property under certain circumstances, are of no importance in this case. This is not a bill for the construction of a deed. The purpose of the bill is to destroy the deed by obtaining an adjudication that it is void, and not to ascertain its meaning. The grantor's wife, in fact, did survive him. It is unnecessary to determine what might have been the rights of the parties if he had survived her or under any other circumstances which did not occur. There is no claim that under this deed, if it is operative at all, the sons and daughter of the grantor have any present interest in the land which would entitle them to partition. It is said there is a direct conflict between paragraphs 14 and 22 and paragraphs 10 and 11. Paragraph 14 refers to a division in case his wife should survive the grantor. Paragraphs 10 and 11 refer to the payment of the semi-annual income to the children of the grantor in case of the death of either of his children and in case the grantor shall have survived his wife. They refer to different aspects of the subject matter and their provisions can not be inconsistent. Those provisions of the deed which relate to the payment of income or disposition of the property in case the grantor survived his wife have become immaterial because he did not survive her, but she did survive him. If the deed is a valid deed, conflicting with no provision of law or public policy, it conveyed the property to the grantee, and the grantee holds it upon all the trusts lawfully declared. If there are inconsistent provisions which require construction to determine their meaning, ap-

plication may be made to a court of equity for instructions as to the duty of the trustee, but those questions do not arise in this suit.

The appellant contends that the instrument is testamentary in character because of the right reserved to the grantor to approve loans made by the trustee; the right to have his debts paid after his death out of the trust estate; the reservation of the net income to the grantor during his life; the right reserved to the grantor to make a division of the real estate among his children, which should control the trustee in making the final distribution and conveyance of the estate; the right to appoint a successor in trust; the right, by an instrument in writing or by will, to revoke the deed in whole or in part, or to change and alter any of the trusts. These provisions are contained in paragraphs 2, 3, 5, 13, 20 and 23 of the deed. This deed, of course, was not effective as a will. It was not executed in the manner required by law for the execution of wills, and nobody claims that it is a will or can be given effect as a will. A will takes effect from the death of the testator; a deed takes effect from its delivery by the grantor in his lifetime. The fact that a deed of trust is made in lieu of a will does not render the instrument a testamentary disposition of property where the deed contains all the requisites to constitute a valid conveyance of real estate under the statute and is duly executed, acknowledged and delivered. Where an instrument contains a grantor and a grantee, recites a valuable consideration, contains the words of conveyance found in ordinary deeds, is under seal and was duly executed, acknowledged and delivered, it is sufficient to constitute a valid conveyance though intended to dispose of the grantor's property in lieu of a will. (*Patterson* v. *McClenathan,* 296 Ill. 475; *Young* v. *Payne,* 283 id. 649; *Kelly* v. *Parker,* 181 id. 49.) In *Kelly* v. *Parker, supra,* a deed was executed by James Kelly conveying to trustees the real estate in trust, "First—During the life of

said James Kelly to allow, suffer and permit him to use, occupy, manage, control, improve and lease, for any term or terms of years, said real estate, or any part thereof, in any manner and for any purposes he may desire, and to allow, suffer and permit the said James Kelly to have, use and enjoy all the rents, issues and profits of said real estate, or any part thereof, in the same manner as if he were the owner in fee simple thereof. * * * Fifth—Saving and reserving, nevertheless, unto said James Kelly full power and authority, during his natural life, to let, demise, mortgage, sell and convey said real estate, or any part or portion thereof, upon such rents, considerations, terms, trusts, conditions and estates, in fee or any less estate or for years, and to such effect as he shall desire, and upon trust to permit him so to do, and to join him, said James Kelly, in the execution of each and every conveyance, conveyances and instruments in writing convenient or necessary to enable said James Kelly so to do, and all moneys and properties realized by the demise, mortgage or sale of said real estate, and of each and every part and parcel thereof, to suffer and permit said James Kelly to convey and dispose of in the same ways and manner as hereinbefore in this deed specified and provided with respect to the rents, issues and profits of said real estate. Sixth—Saving and reserving also to the said James Kelly full power and authority, at his option, by an instrument in writing executed under his hand and seal, to revoke this conveyance and all the powers and trusts hereby created, and require the said trustees or the said successor in trust, their or her heirs, executors and assigns, to re-convey said premises to him, the said James Kelly, or to convey the same to such person or persons as the said James Kelly may by said instrument in writing direct." This instrument the court found to be not testamentary in character but a valid conveyance in trust. It was sought to defeat it on account of some of the trust provisions incorporated in it, being the first, fifth and sixth

provisions, which have been quoted. The objection was made that everything the grantor attempted to convey was at the same time reserved during his life as well as the express power to revoke the instrument itself, and that the grantor did not intend that the deed should take effect until after his death. In answer to this objection it was said: "The deed contains no such provision. The words of the grant are *in presenti,* and where such is the case, upon a delivery of the deed the title to the premises will pass to the grantee. Had this deed declared that the title to the premises should not pass until the death of the grantor a different question might be presented. But such is not the language or import of the deed in question, but, on the other hand, it purports to convey the premises absolutely to the grantees at the time the deed was executed, subject to certain reservations, conditions and trusts incorporated in the instrument." After referring to and distinguishing a number of decisions which had been cited, the court said: "We are aware of no case in this court where a deed like the one in question has been before the court for construction. But in *Shackelton* v. *Sebree,* 86 Ill. 616, a deed was involved containing covenants of warranty with the following provision: 'This deed not to take effect until after my decease—not to be recorded until after my decease.' The instrument was sustained as a valid deed of conveyance. This case was followed and approved in *Harshbarger* v. *Carroll,* 163 Ill. 636."

The reservation to the grantor of the right to revoke the deed and each and every trust, either in whole or in part, was said in *People* v. *Northern Trust Co.* 289 Ill. 475, to have been long recognized by our law as a proper mode of an ancestor deeding his property to his children and of protecting them in the use and enjoyment of the same and that no court has ever declared such a deed is testamentary in character by reason of such a clause of revocation. The fact that the grantor included among the trusts one to in-

vest money on farm mortgages upon the approval of the grantor of any such investment, one to pay the grantor's debts after his death, another to divide the real estate according to the written directions of the grantor filed with the trustee, does not constitute a testamentary disposition of the grantor's property. The right of revocation of the deed in whole or in part includes the right to change and alter any of the trusts.

The appellant contends that the trust deed violates the rule against perpetuities. The violation of the rule is claimed to arise out of the provisions of paragraph 18 of the deed. That paragraph provides that if at the time of allotment and division of the respective shares of the estate one of the children shall be in debt and shall have conducted his or her business so that the trustee shall deem it unsafe to put the fee and the principal of the share of the estate in the hands and unlimited control of the beneficiary, the trustee shall continue the share of such beneficiary in trust, giving him or her only the semi-annual income from the allotted portion of the land, and shall not give to such beneficiary his or her division of the personal property but shall distribute and convey the share of the real estate in trust, after the death of the last surviving child of the grantor, to the beneficiary whose share was so continued in trust beyond the period of allotment and division. It is contended that the postponement, by this paragraph, of the distribution of his share of the property to one of the beneficiaries who might be regarded as unsafe to be intrusted with the control of his share, until after the death of the last surviving child of the grantor, refers to children born after the date of the deed as well as children living at its date, and the last surviving child of the grantor might be born after the date of the deed and his or her death might not occur until more than twenty-one years after the death of all the children living at the date of the deed. The language in question does

not refer to any such after-born child. The literal meaning of the words "the last surviving child of said Carlton J. Bear," construed alone, is the last surviving child of all the children born to Carlton J. Bear at any time, whether before or after the making of the deed. The deed, however, is to be construed as a whole. The words are not to be understood separately without any reference to the context, and where the context shows that they were not used in their literal meaning, they will be given the meaning which the grantor had in mind in their use. The grantor was sixty-one years old when he executed the deed. He had five children, all adults, all married and having children of their own. The first mention of his children in his deed is in the sixth paragraph, where he directs that the net annual income from the remainder of the trust estate, except the shares of capital stock, shall be divided equally amongst his wife and his children, (naming them,) share and share alike. In paragraph 7 he mentions the children again, referring to them as said children of said Carlton J. Bear. In the eighth paragraph he refers to them three times, as "either or any of his sons or his daughter, Grace M. Martin," "said son, sons or daughter respectively," "surviving wife of a son or sons or husband of the daughter of the said Carlton J. Bear," "deceased widow of the son or sons or deceased husband of the daughter." In paragraph 9 he directs that the net income from the estate shall be paid to the "said sons and daughter of the said Carlton J. Bear then living," and in paragraph 10 he refers twice to his children, as "either or any of said sons or daughter" and "such deceased son, sons or daughter." Paragraph 11 begins, "Should said Carlton J. Bear survive his said wife, Bertha R. Bear, then after the death of said Carlton J. Bear, in case either of his said children shall have died." Later in the paragraph is the sentence, "Should such surviving widow of a son or husband of the daughter of said Carlton J. Bear die and there be no

child, children or descendants of a child or children of such son, sons or daughter of said Carlton J. Bear surviving, then such income shall thereafter be distributed among the others entitled to the semi-annual income." When the grantor speaks of his children he refers to them usually as "his son, sons or daughter," "a son or sons or the daughter," "such sons of the said Carlton J. Bear or such daughter." These are the forms of expression used in speaking of his children, the beneficiaries of the trust, and this context clearly indicates that the only children whom he had in mind were the five whom he named when he first mentioned his children in the deed, who are subsequently named later in the deed, and to whom he refers throughout the deed at various times as his son, sons and daughter. The expression "the last surviving child of said Carlton J. Bear," in paragraph 18 of the deed, in connection with the context which has been referred to, means the last surviving child of the four sons and one daughter theretofore mentioned in the deed, and that paragraph is not, therefore, obnoxious to the rule against perpetuities.

The appellant contends that after the execution and delivery of the deed the grantor was the first beneficiary, and his interest was a fee in all the property covered by the trust instrument. This conclusion was reached by the argument that under certain contingencies his estate was to continue indefinitely, because there was no attempt to dispose of the *corpus* of the estate except upon the contingency of his death prior to the death of his wife, and that the grantor through his power of revocation by will or deed and his power of directing a division of his property had an estate in the property. The grantor reserved to himself a life estate, which under no circumstances could continue beyond his life. The powers of revocation and of directing a certain division of the property were only powers, and not estates, and did not enlarge the life estate. His deed conveyed to the grantee all the title he possessed, which

was his fee. He declared the trust in favor of himself for life. If, as the appellant claims, there was no declaration of trust as to the fee in case Carlton J. Bear survived his wife, the effect would be that a trust would result in favor of the grantor if he survived his wife. But he did not, and there is no occasion to speculate on what might have resulted if he had survived his wife. The other alternative, the survival of the wife, happened and presents the case for decision. Under these circumstances the deed provided for the termination of the trust by the distribution of the trust property according to the terms stated on March 1, 1932.

The complainants in the circuit court had no interest in the lands which entitled them to partition, and the demurrer to their bill was properly sustained.

The decree will be affirmed.

*Decree affirmed.*