(No. 25136.— )
THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* IDA
MILLER ARMIGER *et al.* Appellants.

*Opinion filed December 12, 1939.*

HERRICK, VETTE & PEREGRINE, for appellants.

JOHN E. CASSIDY, Attorney General, (WILLIAM MIROS-
LAWSKI, JAMES J. TEBOREK, and ASHLEY GREENE, of coun-
sel,) for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

Ida Miller Armiger and the Oak Park Trust and Sav-
ings Bank appeal directly to this court from an order of
the county court of Cook county fixing the inheritance tax
in the estate of Christiana Miller, deceased.

On December 4, 1923, Christiana Miller executed a trust
agreement with the Oak Park Trust and Savings Bank,
pursuant to which she delivered to the latter, as trustee,
certain property, and ordered and directed the trustee to pay
to Ida Miller Armiger, her daughter, $100 per month from
the date of the trust, during the life of the said Ida Miller

Armiger, with the provision that any additional income earned from the property in trust should, at the end of each year, be paid to the said beneficiary. The trust agreement further provided that upon the death of said Ida Miller Armiger the payment of income in the manner specified should be made to Anna Armiger, a granddaughter, until the latter should reach the age of forty-five years, at which time the personal property in trust should be paid over and delivered to her, and in the event of Anna Armiger dying before attaining the age of forty-five years, without disposing of the property by will, the *corpus* of the trust should go to her heirs-at-law. There is a further provision that if Anna Armiger should die before her mother, then the principal of the property should go as directed by the last will and testament of Ida Miller Armiger, and in the absence of such a will, to the heirs-at-law of Ida Miller Armiger. The trust also contained a provision that the income should be paid directly to the beneficiaries in person and was not to be subject to assignment, garnishment or legal process of any kind. The provisions with respect to revocation and management are as follows:

"*First:* Said trustee shall receive the income and proceeds of said property and shall be authorized to invest, to sell or exchange, convert, re-sell, re-convert, pledge, mortgage or otherwise use said property for the purpose of borrowing upon said property as security. Such investment or any change in the principal of the estate in the hands of said trustee shall only be made with the consent and approval of said party of the second part during her lifetime, and after her death with the consent and approval of the beneficiary under this trust," etc.

"*Fourth:* This trust agreement and all rights and interests and beneficiaries thereunder may at any time be cancelled and revoked by letter or other instrument in writing, signed by said party of the second part and delivered to said trustee, and upon receipt of such letter or instru-

ment in writing, this trust shall immediately cease and determine, and said trustee shall return and pay to said party of the second part the net principal of the trust estate remaining in its hands."

On April 11, 1933, and again on December 22, 1934, Mrs. Miller executed partial revocations of the trust, and on May 25, 1937, and July 31, 1937, she deposited additional securities therein. Mrs. Miller died August 16, 1937, at which time the fair market value of the trust assets amounted to $52,053.87. The securities deposited in 1937 had a fair value of $12,935, and it is conceded by both sides that the latter are taxable. The county court found that the entire assets of the trust were taxable as a gift intended to take effect in possession or enjoyment at or after the death of Mrs. Miller. From this judgment an appeal is taken by the trustee and beneficiary.

At the time the trust was created sub-section 3 of section 1 of the Inheritance Tax act (Ill. Rev. Stat. 1937, chap. 120, par. 375) imposed a tax upon transfers of property "when the transfer is of property made by a resident, * * * by deed, grant, bargain, sale or gift, * * * intended to take effect in possession or enjoyment at or after such death." This section of the statute was construed in *People* v. *Northern Trust Co.* 289 Ill. 475, in a case involving a similar trust where a power of revocation by the settlor was contained in the trust instrument. It was held that delivery of property in trust, with directions to pay the income or *corpus* to a beneficiary, did not come within the provisions above quoted and were not brought within the trust provisions by said trust containing a power of revocation. It was also clearly held that a trust containing a power of revocation was not testamentary in character; that such a deed takes effect at the time of delivery and continues in effect until actually revoked, and if it is not revoked, is in full force and effect forever, and that, therefore, such trust deeds take effect in possession or en-

joyment at the time they are made and not at the time of the death of the settlor.

It was also held in *Bear* v. *Millikin Trust Co.* 336 Ill. 366, that the reservation of a power by a grantor to revoke a trust and approve investments therein does not change a deed into a testamentary disposition of property. While no tax was involved in that case, still the rules of construction of instruments conveying property are the same, whether the controversy be among the beneficiaries or with the State. It is claimed, however, by appellee, that the provision in the trust deed providing that investment of the funds or any change in the principal of the estate should be made only with the consent and approval of the settlor, brings the subject matter into such position that the possession or enjoyment is intended to take effect at her death. It should be observed that the trust instrument also provides that after the death of the settlor the same provision with respect to investment or change of principal can be made only with the consent of the beneficiary. Both provisions are contained in the same sentence and are obviously intended to prevent the trustee from exercising an uncontrolled discretion and are certainly susceptible of an intention to preserve the trust rather than indicate the time of its possession and enjoyment. On principle, this provision does not, so far as the settlor is concerned, enlarge her power, since the right to revoke a trust certainly is broader than taking part in the management, as the latter is included within the former. A like result would have been reached had the settlor designated herself as trustee or cotrustee. *Reinecke* v. *Northern Trust Co.* 278 U. S. 339, 73 L. ed. 410.

Section 1 of the Inheritance Tax statute of 1923 was amended in 1933 by the addition of the following words immediately following those first above quoted: "Or where any change in the use or enjoyment of property included in such transfer, or the income thereof, may occur in the

lifetime of the grantor, vendor or donor by reason of any power reserved to or conferred upon the grantor, vendor or donor, either solely or in conjunction with any person or persons, corporation or corporations not having a substantial interest adverse to that of the grantor, vendor or donor, to alter, or to amend or to revoke any transfer, or any portion thereof as to the portion remaining at the time of the death of the grantor, vendor or donor, thus subject to alterations, amendment or revocation." This amendment covers the precise situation in this case and had it been in effect at the time the trust was made there could be no doubt that the power of revocation or alteration contained in the instrument would have made the property taxable. We do not need, however, to consider the effect of this amendment upon the trust in question because the amendment also contained a proviso as follows: "Provided, however, that the amendments to this sub-section 3 effected [affected] by this amendatory act of the Fifty-eighth General Assembly shall not apply to transfers made prior to July 1, 1933, and not taxable under the laws existing prior to July 1, 1933," etc.

Analysis shows that the original act provided for a tax on a transfer where the possession or enjoyment was intended to take effect at or after death. The amendment extended the power of taxation to transfers made in the present, but in which the donor reserved a power to alter, amend or revoke the transfer, thus bringing within the terms of the act property which was not included within the terms of the original act.

In the trust under consideration $12,935 was placed in the trust in 1937 after the amendment became effective and thus was properly taxable. The remainder of the property went into the trust in 1923 and remained there continuously until Mrs. Miller's death. In construing the statute as it applies to this last mentioned amount, we must consider it as though the amendment had not been adopted,

since it expressly excludes all transfers made prior to that time.

It is said that we must ascertain whether the transfer in question comes within the provision of the act by ascertaining the intention of the settlor and, further, by determining whether the donor retains the economic interest or enjoyment of the property during his life. Conceding the question of intention to be material, we do not believe that parol statements of understandings can be invoked to completely nullify the plain terms of the trust indenture. In the case before us, after the death of the daughter, the entire income went to the granddaughter until she reached the age of forty-five years, when it became hers absolutely. If the granddaughter should die before the first beneficiary, then the latter had a right to dispose of the property by will. The settlor retained nothing of economic benefit to herself. The right of revocation might wisely be inserted for the purpose of making changes in case both the daughter and the granddaughter died, and the right to participate in the management, although included in the power of revocation, was added protection to the interests of those for whose benefit the trust was created. It might be observed that reservation of rights of management does not make a transfer taxable under the amendment of 1933.

Our attention has been called to *People* v. *Moses,* 363 Ill. 423. In that case the settlor retained the income and expended it as she saw fit and the beneficiaries who sought to escape taxation received the beneficial interest and enjoyment at her death. The real enjoyment, so long as the settlor lived, was in her, which brought the situation within the provision of the statute that where the enjoyment or possession takes place at death, the interest is taxable. No real interest passed to the other beneficiaries in that case but merely legal title.

In *People* v. *McCormick,* 327 Ill. 547, the donor reserved the right to take any part of the income and use it

for charity or to keep her own income at a fixed figure of $250,000 a year. The beneficiaries had no present right and the terms of the trust and the facts surrounding it clearly showed that their possession and enjoyment would come at the death of the settlor and not before.

When we take the language of the statute as it existed in 1923, and the construction thereof by this court, it appears the legislature, at the time of the amendment of 1933, recognized that transfers like the one involved herein were not taxable. The effect of the amendment was to make subject to the inheritance tax transfers of property in cases where the possession and enjoyment were presently vested, and so continued until the settlor's death, but in which the settlor or vendor reserved the right to revoke, alter or change the rights of the beneficiary. The legislative recognition of the effect and construction of the prior act is strengthened by the further provision that any case arising before 1933 should not come within its provisions. It was agreed by the parties that all the property in the trust except $12,935 has remained in the hands of the trustee continuously since 1923 and that, as to such part, it is clear there has been no revocation of the trust. This part of the trust property may not be included under the act of 1933, because of the proviso above mentioned, and was not taxable under the law as it existed in 1923. The inclusion of this amount in the taxable estate of Christiana Armiger was error.

The judgment of the county court of Cook county is reversed and the cause remanded, with directions to proceed in a manner not inconsistent with the views expressed herein.

*Reversed and remanded.*