Louise Bergmann, Appellant, v. Foreman State Trust and Savings Bank et al., Appellees.

Gen. No. 37,059.

Opinion filed February 5, 1934.

James Donahoe, for appellant.

William H. A. Rust, George Allen McCorkle and H. J. Rosenberg, for appellees; H. J. Rosenberg, of counsel.

Mr. Justice O'Connor delivered the opinion of the court.

By this appeal the complainant, Louise Bergmann, seeks to reverse a decree entered by the circuit court of Cook county, dismissing her bill for want of equity.

Complainant's position is that she is entitled to one-third interest in securities of the face value of $20,000 held by the Foreman Trust and Savings Bank as trustee under a trust agreement between it and Fred H. Bergmann, Sr.

The record discloses that on September 24, 1918, Fred H. Bergmann, a widower, and Louise Happ, a widow, contemplated marriage and on that date entered into an antenuptial agreement which recites that the parties were about to be married; that Louise Happ owned certain real estate in Chicago and personal property not to exceed $1,500; that Fred H. Bergmann owned his home in Chicago, certain lands in California, and had personal property not to exceed $20,000; that it was decided that after their marriage the property of each should remain the separate property and be subject to the control of its respective owner; and that any property each might acquire after the marriage would be beyond the control of the other, except as to one-third of the personal property of which Fred H. Bergmann died seized or possessed of and one-third of his home in Chicago, which he agreed to give to Louise Happ at the time of his death, and this was to be in lieu of dower, homestead, realty, and all other rights of Louise Happ. The next day, September 25, 1918, the parties married and lived amicably together as husband and wife until Fred H. Bergmann died in California March 6, 1928.

October 27, 1925, Fred H. Bergmann executed a trust agreement with the defendant, Foreman Trust and Savings Bank as trustee, whereby he sold and delivered to the bank, as trustee, the personal prop-

erty involved in this suit, viz., 5 gold bonds of $1,000 each; 6 other gold bonds of $1,000 each, and a note for $9,000 secured by a mortgage. The income was to be collected by the trustee and paid over to Fred H. Bergmann during his natural life, and upon his death the trustee was to divide the property into two equal parts, one to be held by the trustee for the benefit of his grandson, Frederick H. Bergmann III, 13 years of age, and the other part to be held by the trustee for the benefit of his grandson, Ernest F. Bergmann. The income was to be paid by the trustee to the fathers of the two boys, respectively, until the boys attained the age of 25 years, at which time the trustee was to turn the property over to the two grandsons respectively. Fred H. Bergmann reserved the right to revoke the agreement at any time upon giving 15 days' written notice in writing to the trustee.

A few days after the execution of the trust agreement Fred H. Bergmann executed his will, in which he referred to the making of the antenuptial agreement and stated that they had subsequently married, and ''as a result of said agreement no provision is made herein for my beloved wife, Louise Bergmann.'' The will then made a bequest of $10,000 to his stepson and released another stepson from any indebtedness he might owe the testator. These two stepsons were the children of his first wife by a former marriage and were known as Frederick H. Bergmann, Jr., and William Bergmann. The residue of his estate was bequeathed to his son Ernest F. Bergmann.

Fred H. Bergmann died in California March 6, 1928, and his will was probated there. Ernest F. Bergmann deceased's son, was appointed executor by the court in California, and as such he on January 14, 1929, paid to the widow, Louise Bergmann, $16,500, and on May 13, 1930, $7,500 on account of her distributive share of the deceased's estate under the antenuptial agreement.

The executor filed his final account in the California court; objections to it were filed by the widow, Louise Bergmann, and the court ordered the executor to charge himself with an additional $87,000 evidenced by securities. The court found that the deceased left personal property of the value of $215,150.74; that his widow, Louise Bergmann, under the antenuptial agreement was entitled to one-third of this, or $71,716.91.

An appeal was taken to the Supreme Court of California. Afterward the parties entered into an agreement whereby the judgment of the trial court was to be reversed, in consideration of which the widow accepted $60,000 worth of securities in addition to the partial distribution made to her, as above mentioned, in full of all claims she might have against the estate, and to all of her claims which she had under the antenuptial agreement, excepting therefrom the securities involved in the instant case.

It is conceded that the antenuptial agreement was in full force and effect on March 6, 1928, the date of the death of Fred H. Bergmann, and that the widow, Louise Bergmann, received all she was entitled to under that agreement except that she claimed she was entitled to receive one-third of the securities of the face value of $20,000.

The trust agreement entered into between Fred H. Bergmann and the Foreman Bank as trustee was valid and binding although Fred H. Bergmann reserved the income of the securities in trust during his lifetime, and although he also reserved the right of revocation; *Kelly v. Parker,* 181 Ill. 49; *People v. Northern Trust Co.,* 289 Ill. 475; *Bear v. Millikin Trust Co.;* 336 Ill. 366; *Gurnett v. Mutual Life Ins. Co. of New York,* 268 Ill. App. 518, and this seems to be conceded. But counsel for complainant contends that ''her deceased husband, by his antenuptial agreement, barred himself from making any gifts, trusts or grants of his personal property in any form whatsoever, during his lifetime,

and whereby the wife, as widow, should be prevented from receiving the agreed share of one-third of the personal property of her husband.'' We think this contention cannot be sustained because it is clear that when Fred H. Bergmann delivered the securities to the Foreman Trust and Savings Bank as Trustee, he did not do so to defraud the complainant but was acting in entire good faith in making provision for his two grandchildren, and the securities were not unreasonable in amount.

It is undisputed that complainant and her deceased husband lived harmoniously as husband and wife until his death. In his will he expressly stated he made no provision for her because of the antenuptial agreement. She obtained in settlement of his estate $24,000 in money and securities of the face value of $60,000. Although at the time the antenuptial agreement was made, Fred H. Bergmann had personal property of but $20,000, it must be presumed, in the absence of any evidence to the contrary (and there is none in the record), that the antenuptial agreement spoke the truth and that he made most of his money after the marriage.

Where a man has entered into an antenuptial agreement with a woman who becomes his wife to give her a proportional part of his estate, he may make gifts during his life without breaking the agreement if the gifts are made in good faith and are reasonable in amount. *Eaton v. Eaton,* 233 Mass. 351; *Dickinson v. Seaman,* 193 N. Y. 18.

In the *Eaton* case the court in discussing this question said (p. 375): ''The true rule, fairly to be deduced from the weight of authority and resting on sound reason, is that a man, who has entered into an antenuptial agreement with a woman, who becomes his wife, to give her by will a proportional part of his estate, may without breaking his agreement make gifts

during his life in good faith and reasonable in amount having regard to all the circumstances, but he cannot make gifts either absolutely, conditionally, indirectly or otherwise for the main purpose of defeating his agreement and preventing it from operating for the benefit of his wife. The motive in such a case affects the validity of the transaction because it determines 'the extent of a privilege to infringe upon the admitted right of another.' '' In that case the court quoted with approval from the *Dickinson* case, *supra.*

In the *Dickinson* case, *supra,* it was contended that by reason of an antenuptial agreement made between plaintiff's mother and the deceased, plaintiff became entitled to all of the deceased's property at the time of his death without any reduction through gifts made during his lifetime. The court there said (p. 24): "It is asked, however, whether the decedent could give away all his property to his own relatives, and thus defeat the antenuptial contract altogether. And, assuming that he could not do this because it would be unreasonable, it is further asked where the line is to be drawn between the power to give away all and to give away nothing. That line is to be drawn where the courts always draw it when they can, along the boundary of good faith. If the decedent had given away property with furtive intent, for the purpose of defeating the antenuptial contract and of defrauding the plaintiff, the gift would have been void. No such fact is alleged in the complaint. No case of fraudulent intent or fraud, in fact, is presented by the plaintiff. Her theory is that any gift, or at least that any substantial gift by the decedent, even if made with the best of intentions, was unauthorized and void. We do not so read the contract. Any gift made with actual intent to defraud would be void, but none made without such intent, unless so out of proportion to the rest of his estate as to attack the integrity of the contract,

when it would be fraudulent as matter of law. The gift might be so large that, independent of intent or motive, fraud upon the contract would be imputed. . . . Reasonable gifts were impliedly authorized. Unreasonable gifts were not, even if made without actual intent to defraud. In the absence of intentional fraud, the question is one of degree and depends upon the proportion that the value of the gift bears to the amount of the donor's estate.' The plaintiff alleges that the decedent accumulated a large fortune and had it at the time of his death, and if so a gift of $10,000 made in his lifetime to his brothers and sisters would not be a fraud upon the contract as matter of law, for it would not be unusual or unreasonable for a man so situated to make a gift of that amount to near relatives.''

In the instant case there is entire absence of fraud, but on the contrary the trust agreement and all of the acts and doings of the deceased show the utmost good faith. And the provision made by him in the trust agreement for his two grandsons is not unreasonable in amount.

The decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*