Regina Farkas and Victor Farkas, Co-Administrators of Estate of Albert B. Farkas, Also Known as Bernhard F. Farkash, Albert Fox and Bernhard Fox, Deceased, Appellees, v. Richard J. Williams and Investors Mutual, Inc., a Nevada Corporation, Appellants.

Gen. No. 46,378.

Opinion filed July 2, 1954. Released for publication September 14, 1954.

LEVINSON, BECKER & PEEBLES, of Chicago, for certain appellant; DON M. PEEBLES, and HALBERT O. CREWS, both of Chicago, of counsel.

JACOB STAGMAN, of Chicago, for certain other appellant; ERWIN H. GREENBERG, of Chicago, of counsel.

MILTON M. HERMANN, M. J. WEISS, and ALBERT S. LIGHT, all of Chicago, for appellees; MILTON M. HERMANN, of Chicago, of counsel.

MR. JUSTICE LEWE delivered the opinion of the court.

Defendants appeal from a decree finding that certain declarations of trust executed by Albert B. Farkas, herinafter called the "decedent," naming the defendant Richard J. Williams as the beneficiary, are invalid and that Regina Farkas and Victor Farkas, co-administrators of the estate of Albert Farkas, deceased, are the owners of certain shares of the capital stock of Investors Mutual, Inc., a corporation. The cause was submitted to the trial court on the pleadings and a stipulation of facts.

Decedent, a resident of the City of Chicago, Illinois, died intestate at the age of sixty-seven years in Phoenix, Arizona, leaving him surviving as his heirs at law and next of kin brothers, sisters, a nephew, and nieces.

For many years the decedent, a veterinarian, operated a veterinarian establishment in the City of Chicago. He employed the defendant Williams who lived in a furnished room on the decedent's premises and received "some kind of a salary." Williams was not related to the decedent by blood or marriage. After

249

decedent's death there were found among other things in safe deposit boxes leased in the name of the decedent in Chicago and Phoenix four separate applications for stock and four documents titled "declarations of trust" which except for the dates and amounts of stock applied for are identical. In each instance the written applications for the purchase of the stock of Investors Mutual, Inc., by the decedent as trustee for Williams and the accompanying declarations of trust were executed simultaneously. The declaration of trust reads:

"I, the undersigned, having purchased or declared my intention to purchase certain shares of capital stock of Investors Mutual, Inc. (the Company), and having directed that the certificate for said stock be issued in my name as trustee for Richard J. Williams as beneficiary, whose address is 1704 W. North Ave., Chicago, Ill., under this Declaration of Trust DO HEREBY DECLARE that the terms and conditions upon which I shall hold said stock in trust and any additional stock resulting from reinvestment of cash dividends upon such original or additional shares are as follows:

"(1) During my lifetime all cash dividends are to be paid to me individually for my own personal account and use; provided, however, that any such additional stock purchased under an authorized reinvestment of cash dividends shall become a part of and subject to this trust.

"(2) Upon my death the title to any stock subject hereto and the right to any subsequent payments or distributions shall be vested absolutely in the beneficiary. The record date for the payment of dividends, rather than the date of declaration of the dividend, shall, with reference to my death, determine whether any particular dividend shall be payable to my estate or to the beneficiary.

"(3) During my lifetime I reserve the right, as trustee, to vote, sell, redeem, exchange or otherwise

250

deal in or with the stock subject hereto, but upon any sale or redemption of said stock or any part thereof, the trust hereby declared shall terminate as to the stock sold or redeemed, and I shall be entitled to retain the proceeds of sale or redemption for my own personal account and use.

"(4) I reserve the right at any time to change the beneficiary or revoke this trust, but it is understood that no change of beneficiary and no revocation of this trust except by death of the beneficiary, shall be effective as to the Company for any purpose unless and until written notice thereof in such form as the Company shall prescribe is delivered to the Company at Minneapolis, Minnesota. The decease of the beneficiary before my death shall operate as a revocation of this trust.

"(5) In the event this trust shall be revoked or otherwise terminated, said stock and all rights and privileges thereunder shall belong to and be exercised by me in my individual capacity.

"(6) The Company shall not be liable for the validity or existence of any trust created by me, and any payment or other consideration made or given by the Company to me as trustee or otherwise, in connection with said stock or any cash dividends thereon, or in the event of my death prior to revocation, to the beneficiary, shall to the extent of such payment fully release and discharge the Company from liability with respect to said stock or any cash dividends thereon."

Decedent paid for the stock with his own funds and he alone had access to the safe deposit boxes. The applications and declarations of trust here in controversy all bear the authentic signatures of the decedent. It is uncontroverted that the estate of the decedent is solvent.

 The question presented is whether the trial court correctly rested its decision upon the ground

that the applications for the stock and the trust declarations executed by the decedent are attempted testamentary dispositions. In Trusts and Trustees, by Bogert, Volume 1, page 1, the author states that "a trust may be defined as a fiduciary relationship in which one person holds a property interest, subject to an equitable obligation to keep or use that interest for the benefit of another." To the same effect see Restatement of the Law of Trusts, Volume 1, section 2. In the instant case the first paragraph of the trust agreement provides that during the lifetime of the decedent all cash dividends are to be paid to him individually for his personal use, and under the provisions of the third paragraph the decedent as trustee reserved the right to deal with the stock in any manner he saw fit. With respect to stock sold or redeemed the trust terminated and the decedent was entitled to retain the proceeds of the sale or redemption for his own use. Thus the settlor acting as his own trustee had in fact no obligation during his lifetime to Williams with respect to the income or corpus. Under similar circumstances the precise question presented here was determined adversely to the defendant's contentions in *Application of Cerchia,* 108 N. Y. S. 753, where the court said, "Analyzing the writing we find the settlor retained exclusive control over the disposition of the income. The securities, comprising the corpus of the trust, are to be sold only if he, in his absolute discretion, deems it advisable. In the event of a sale there is no obligation to apply the proceeds for the benefit of the named beneficiary. No enforceable interest in the fund is created unless and until the settlor dies without revoking the trust. Such a writing is testamentary in nature."

 Defendant Williams says that the retention by the settlor of the power to revoke coupled with the right to use and enjoy the income of the trust *res* dur-

252

ing his lifetime does not render the trust testamentary. We think the governing principle has been stated with clarity and precision in Scott on Trusts, Volume 1, section 56, page 327, where the author says: "The owner of property may intend to create a trust of the property either by transferring it to another person as trustee or by declaring himself trustee of it. In either event, if the beneficiaries do not acquire any interest in the property prior to his death, the transaction is clearly testamentary and invalid unless there is a compliance with the requirements of the statute on wills." Compare Restatement of the Law on Trusts, Volume 1, section 56, page 167. See also *In re Tunnell's Estate,* 325 Pa. 554; *Betker v. Nalley,* 78 App. D. C. 312, 140 F.2d 171.

Defendants rely strongly on *Kelly v. Parker,* 181 Ill. 49, *Gurnett v. Mutual Life Ins. Co. of N. Y.,* 356 Ill. 612, and *United Building & Loan Ass'n v. Garrett,* 64 F. Supp. 460. In our view the *Kelly* case is readily distinguishable from this case for the reason that the deed in that case purported to convey the premises to the trustees absolutely at the time it was executed. Nor was there a provision in the deed that it would not take effect until after the grantor's death. And in the *Gurnett* case the named corporate trustee had active duties to perform when the proceeds of certain insurance policies came into its hands. In the case at bar when the trustee died the trust terminated and the title to the stock vested in Williams. In the case last cited by defendants, *United Building & Loan Ass'n v. Garrett,* there is a striking resemblance to the facts in this case except that provision was made for a succession of interests of the beneficiaries in the event any died before the termination of the trust, and that the trusts created as to two of the certificates involved terminated one year after the death of the settlor. The reasoning and the authorities cited support defendant's

position. This case merits respectful consideration. However, we are persuaded by the authorities relied on by the plaintiffs and the consensus of the text writers referred to herein.

██ ██ The indispensable elements of a trust are stated in *Wagner v. Clauson,* 399 Ill. 403, at page 411, as follows: "It is essential to the creation of a trust that the declaration must make reasonably certain its material terms, and that these terms include, first, the subject matter of property embraced within the trust; second, the beneficiaries or persons in whose behalf the trust is created; third, the nature and quantity of the interests which they are to have; and, fourth, the manner in which the trust is to be performed." In this case the third and fourth requirements are lacking, since during the lifetime of the trustee he had absolute dominion of the property involved and no performance was required. In short there was no equitable obligation enforceable by the beneficiary Williams.

For the reasons given, the decree is affirmed.

*Decree affirmed.*

FEINBERG, P. J. and KILEY, J., concur.