(No. 33389.

Regina Farkas *et al.*, Admrs., Appellees, *vs.* Richard J. Williams *et al.*, Appellants.

*Opinion filed February 16, 1955—Rehearing denied April 15, 1955.*

LEVINSON, BECKER & PEEBLES, and JACOB STAGMAN, both of Chicago, (DON M. PEEBLES, HALBERT O. CREWS, and ERWIN H. GREENBERG, of counsel,) for appellants.

MILTON M. HERMANN, M. J. WEISS, and ALBERT S. LIGHT, all of Chicago, for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is an appeal from a decision of the Appellate Court, First District, which affirmed a decree of the circuit court of Cook County finding that certain declarations of trust executed by Albert B. Farkas and naming Richard J. Williams as beneficiary were invalid and that Regina Farkas and Victor Farkas, as coadministrators of the estate of said Albert B. Farkas, were the owners of the property referred to in said trust instruments, being certain shares of capital stock of Investors Mutual, Inc.

Said coadministrators, herein referred to as plaintiffs, filed a complaint in the circuit court of Cook County for a declaratory decree and other relief against said Richard J. Williams and Investors Mutual, Inc., herein referred to as defendants. The plaintiffs asked the court to declare their legal rights, as coadministrators, in four stock certificates issued by Investors Mutual Inc. in the name of "Albert B. Farkas, as trustee for Richard J. Williams" and which were issued pursuant to written declarations of trust. The decree of the circuit court found that said declarations were testamentary in character, and not having been executed with the formalities of a will, were invalid, and directed that the stock be awarded to the plaintiffs as an asset of the estate of said Albert B. Farkas.

Upon appeal to the Appellate Court, the decree was affirmed. (See 3 Ill. App. 2d 248.) We allowed defendants' petition for leave to appeal.

Albert B. Farkas died intestate at the age of sixty-seven years, a resident of Chicago, leaving as his only heirs-at-law brothers, sisters, a nephew and a niece. Although retired at the time of his death, he had for many years practiced veterinary medicine and operated a veterinarian establishment in Chicago. During a considerable portion of that time, he employed the defendant Williams, who was not related to him.

On four occasions (December 8, 1948; February 7, 1949; February 14, 1950; and March 1, 1950) Farkas purchased stock of Investors Mutual, Inc. At the time of each purchase he executed a written application to Investors Mutual, Inc., instructing them to issue the stock in his name "as trustee for Richard J. Williams." Investors Mutual, Inc., by its agent, accepted each of these applications in writing by signature on the face of the application. Coincident with the execution of these applications, Farkas signed separate declarations of trust, all of which were identical except as to dates. The terms of said trust instruments are as follows:

"DECLARATION OF TRUST—REVOCABLE. I, the undersigned, having purchased or declared my intention to purchase certain shares of capital stock of Investors Mutual, Inc. (the Company), and having directed that the certificate for said stock be issued in my name as trustee for Richard J. Williams as beneficiary, whose address is 1704 W. North Ave. Chicago, Ill., under this Declaration of Trust Do HEREBY DECLARE that the terms and conditions upon which I shall hold said stock in trust and any additional stock resulting from reinvestments of cash dividends upon such original or additional shares are as follows:

(1) During my lifetime all cash dividends are to be paid to me individually for my own personal account and use; provided, however, that any such additional stock purchased under an authorized reinvestment of cash dividends shall become a part of and subject to this trust.

(2) Upon my death the title to any stock subject hereto and the right to any subsequent payments or distributions shall be vested absolutely in the beneficiary. The record date for the payment of dividends, rather than the date of declaration of the dividend, shall, with reference to my death, determine whether any particular dividend shall be payable to my estate or to the beneficiary.

(3) During my lifetime I reserve the right, as trustee, to vote, sell, redeem, exchange or otherwise deal in or with the stock subject hereto, but upon any sale or redemption of said stock or any part thereof, the trust hereby declared shall terminate as to the stock sold or redeemed, and I shall be entitled to retain the proceeds of sale or redemption for my own personal account and use.

(4) I reserve the right at any time to change the beneficiary or revoke this trust, but it is understood that no change of beneficiary and no revocation of this trust except by death of the beneficiary, shall be effective as to the Company for any purpose unless and until written notice thereof in such form as the Company shall prescribe is delivered to the Company at Minneapolis, Minnesota. The decease of the beneficiary before my death shall operate as a revocation of this trust.

(5) In the event this trust shall be revoked or otherwise terminated, said stock and all rights and privileges thereunder shall belong to and be exercised by me in my individual capacity.

(6) The Company shall not be liable for the validity or existence of any trust created by me, and any payment or other consideration made or given by the Company to me as trustee or otherwise, in connection with said stock or any cash dividends thereon, or in the event of my death prior to revocation, to the beneficiary, shall to the extent of such payment fully release and discharge the Company from liability with respect to said stock or any cash dividends thereon."

The applications and declarations of trust were delivered to Investors Mutual, Inc., and held by the company until Farkas' death. The stock certificates were issued in the name of Farkas as "trustee for Richard J. Williams" and were discovered in a safety-deposit box of Farkas after his death, along with other securities, some of which were in the name of Williams alone.

The sole question presented on this appeal is whether the instruments entitled "Declaration of Trust—Revocable"

and executed by Farkas created valid *inter vivos* trusts of the stock of Investors Mutual, Inc. The plaintiffs contend that said stock is free and clear from any trust or beneficial interest in the defendant Williams, for the reason that said purported trust instruments were attempted testamentary dispositions and invalid for want of compliance with the statute on wills. The defendants, on the other hand, insist that said instruments created valid *inter vivos* trusts and were not testamentary in character.

It is conceded that the instruments were not executed in such a way as to satisfy the requirements of the statute on wills; hence, our inquiry is limited to whether said trust instruments created valid *inter vivos* trusts effective to give the purported beneficiary, Williams, title to the stock in question after the death of the settlor-trustee, Farkas. To make this determination we must consider: (1) whether upon execution of the so-called trust instruments defendant Williams presently acquired an interest in the subject matter of the trusts, the stock of defendant Investors Mutual, Inc., (2) whether Farkas, as settlor-trustee, retained such control over the subject matter of the trusts as to render said trust instruments attempted testamentary dispositions.

*First,* upon execution of these trust instruments did defendant Williams presently acquire an interest in the subject matter of the intended trusts?

If no interest passed to Williams before the death of Farkas, the intended trusts are testamentary and hence invalid for failure to comply with the statute on wills. (*Oswald* v. *Caldwell,* 225 Ill. 224; *Troup* v. *Hunter,* 300 Ill. 110; Restatement of the Law of Trusts, section 56.) But considering the terms of these instruments we believe Farkas did intend to presently give Williams an interest in the property referred to. For it may be said, at the very least, that upon his executing one of these instruments, he showed an intention to presently part with some of the inci-

dents of ownership in the stock. Immediately after the execution of each of these instruments, he could not deal with the stock therein referred to the same as if he owned the property absolutely, but only in accordance with the terms of the instrument. He purported to set himself up as trustee of the stock for the benefit of Williams, and the stock was registered in his name as trustee for Williams. Thus assuming to act as trustee, he is held to have intended to take on those obligations which are expressly set out in the instrument, as well as those fiduciary obligations implied by law. In addition, he manifested an intention to bind himself to having this property pass upon his death to Williams, unless he changed the beneficiary or revoked the trust, and then such change of beneficiary or revocation was not to be effective as to Investors Mutual, Inc., unless and until written notice thereof in such form as the company prescribed was delivered to them at Minneapolis, Minnesota. An absolute owner can dispose of his property, either in his lifetime or by will, in any way he sees fit without notifying or securing approval from anyone and without being held to the duties of a fiduciary in so doing.

It seems to follow that what incidents of ownership Farkas intended to relinquish, in a sense he intended Williams to acquire. That is, Williams was to be the beneficiary to whom Farkas was to be obligated, and unless Farkas revoked the instrument in the manner therein set out or the instrument was otherwise terminated in a manner therein provided for, upon Farkas' death Williams was to become absolute owner of the trust property. It is difficult to name this interest of Williams, nor is there any reason for so doing so long as it passed to him immediately upon the creation of the trust. As stated in 4 Powell, The Law of Real Property, at page 87: "Interests of beneficiaries of private express trusts run the gamut from valuable substantialities to evanescent hopes. Such a beneficiary may have any one of an almost infinite variety of

the possible aggregates of rights, privileges, powers and immunities."

An additional problem is presented here, however, for it is to be noted that the trust instruments provide: "The decease of the beneficiary before my death shall operate as a revocation of this trust." The plaintiffs argue that the presence of this provision removes the only possible distinction which might have been drawn between these instruments and a will. Being thus conditioned on his surviving, it is argued that the "interest" of Williams until the death of Farkas was a mere expectancy. Conversely, they assert, the interest of Farkas in the securities until his death was precisely the same as that of a testator who bequeaths securities by his will, since he had all the rights accruing to an absolute owner.

Admittedly, had this provision been absent the interest of Williams would have been greater, since he would then have had an inheritable interest in the lifetime of Farkas. But to say his interest would have been greater is not to say that he here did not have a beneficial interest, properly so-called, during the lifetime of Farkas. The provision purports to set up but another "contingency" which would serve to terminate the trust. The disposition is not testamentary and the intended trust is valid, even though the interest of the beneficiary is contingent upon the existence of a certain state of facts at the time of the settlor's death. (Restatement of the Law of Trusts, section 56, comment f.) In an example contained in the previous reference, the authors of the Restatement have referred to the interest of a beneficiary under a trust who must survive the settlor (and where the settlor receives the income for life) as a contingent equitable interest in remainder.

This question of whether any interest passed immediately is also involved in the next problem considered, namely, the quantum of power retained by a settlor which will cause an intended *inter vivos* trust to fail as an at-

tempted testamentary disposition. Therefore, much of what is said in the next part of the opinion, as well as the authorities cited, will pertain to this interest question.

*Second,* did Farkas retain such control over the subject matter of the trusts as to render said trust instruments attempted testamentary dispositions?

In each of these trust instruments, Farkas reserved to himself as settlor the following powers: (1) the right to receive during his lifetime all cash dividends; (2) the right at any time to change the beneficiary or revoke the trust; and (3) upon sale or redemption of any portion of the trust property, the right to retain the proceeds therefrom for his own use.

Additionally, Farkas reserved the right to act as sole trustee, and in such capacity, he was accorded the right to vote, sell, redeem, exchange or otherwise deal in the stock which formed the subject matter of the trust.

We shall consider first those enumerated powers which Farkas reserved to himself as settlor.

It is well established that the retention by the settlor of the power to revoke, even when coupled with the reservation of a life interest in the trust property, does not render the trust inoperative for want of execution as a will. *Kelly* v. *Parker,* 181 Ill. 49; *Bear* v. *Millikin Trust Co.* 336 Ill. 366; *Gurnett* v. *Mutual Life Ins. Co.* 356 Ill. 612; *Bergmann* v. *Foreman State Trust & Savings,* 273 Ill. App. 408; 32 A.L.R. 2d 1279-1282.

Only when it is thought that there are additional reservations present of such a substantial nature as to amount to the retention of full ownership is a court likely to invalidate an *inter vivos* trust by reason of its not being executed as a will. (See Restatement of the Law of Trusts, section 57.) In 1 Scott, The Law of Trusts, section 57.1, the author says at pages 336-7: "It is immaterial whether the settlor reserves simply a power to revoke the whole trust at one time or whether he reserves also a power to

revoke the trust as to any part of the property from time to time. It is immaterial whether the power to revoke includes a power to revoke by will as well as a power to revoke by a transaction *inter vivos*. It is immaterial that the settlor reserves not only a power to revoke the trust but in addition a power to alter or modify its terms."

However, it is not every so-called additional reservation of power that will be deemed sufficient to invalidate a trust of this nature. In 32 A.L.R. 2d 1270, it is stated at pages 1276-7: "The later cases, as do the earlier ones, justify the general conclusion that many and extensive rights and power may be reserved by a settlor, in addition to a life interest and power of revocation, without defeating the trust. The instrument is likely to be upheld notwithstanding it includes additionally the reservation of power to amend the trust in whole or in part, or extensive powers over investments, management, or administration, or power to appoint or remove trustees or to appoint interests in remainder, or the right to act as trustee or as one of the trustees, or to enjoy limited rights in the principal, or to withdraw part or all of the principal, or to possess, use, or enjoy the trust property, or to sell or mortgage the property or any of it and appropriate the proceeds."

We conclude therefore, in accordance with the great weight of authority, said powers which Farkas reserved to himself as settlor were not such as to render the intended trusts invalid as attempted testamentary dispositions.

A more difficult problem is posed, however, by the fact that Farkas is also trustee, and as such, is empowered to vote, sell, redeem, exchange and otherwise deal in and with the subject matter of the trusts.

That a settlor may create a trust of personal property whereby he names himself as trustee and acts as such for the beneficiary is clear. Restatement of the Law of Trusts, section 17.

Moreover, the later cases indicate that the mere fact that the settlor in addition to making himself sole trustee also reserves a life interest and a power of revocation does not render the trust invalid as testamentary in character. (32 A.L.R. 2d 1286.) In 1 Scott, The Law of Trusts, it is stated at pages 353-4: "The owner of property may create a trust not only by transferring the property to another person as trustee, but also by declaring himself trustee. Such a declaration of trust, although gratuitous, is valid. * * * Suppose, however, that the settlor reserves not only a beneficial life interest but also a power of revocation. It would seem that such a trust is not necessarily testamentary. The declaration of trust immediately creates an equitable interest in the beneficiaries, although the enjoyment of the interest is postponed until the death of the settlor, and although the interest may be divested by the exercise of the power of revocation. The disposition is not essentially different from that which is made where the settlor transfers the property to another person as trustee. It is true that where the settlor declares himself trustee he controls the administration of the trust. As has been stated, if the settlor transfers property upon trust and reserves not only a power of revocation but also power to control the administration of the trust, the trust is testamentary. There is this difference, however: the power of control which the settlor has as trustee is not an irresponsible power and can be exercised only in accordance with the terms of the trust." See also Restatement of the Law of Trusts, section 57, comment b.

In the instant case the plaintiffs contend that Farkas, as settlor-trustee, retained complete control and dominion over the securities for his own benefit during his lifetime. It is argued that he had the power to deal with the property as he liked so long as he lived and owed no enforceable duties of any kind to Williams as beneficiary.

It does not appear that this court has heretofore considered a trust instrument similar to those in question, but we have passed upon the validity of trust instruments wherein the settlor retained a life interest in the trust property and the power to revoke, plus other somewhat extensive powers.

In *Kelly* v. *Parker*, 181 Ill. 49, a grantor-settlor conveyed land in trust, to be held by two trustees for certain express purposes, but subject to reservations of power by the settlor. Among these reservations were the following: (1) the right during his lifetime to use, occupy, manage, control, improve and lease the land, or any part thereof, in any manner and for any purpose he might desire and to have and use and enjoy all the rents, issues and profits of said land in the same manner as if he were the owner in fee simple thereof; (2) the right to sell or mortgage the land, or any part thereof, and retain the proceeds for his own use; and (3) the right to revoke the conveyance and secure a reconveyance from the trustees. The court refused to set aside the deed on the ground that it was an attempted testamentary disposition which was invalid for failure to satisfy the statute on wills.

In *Bear* v. *Millikin Trust Co.* 336 Ill. 366, the settlor executed an indenture of trust whereby he conveyed real estate and transferred stock certificates to a trustee, to be held by the latter for certain express purposes. The trust was held to be valid despite the retention by the settlor of the following powers: (1) the right to approve loans made by the trustee; (2) the right to have his debts paid after his death out of the trust estate; (3) the right to receive the net income during his life; (4) the right to make any division of the real estate among his children that he might desire; (5) the right to appoint a successor in trust; (6) the right to vote the stock; (7) the right to revoke the trust; and (8) the right to make any change,

or alter or amend the trust. There were also provisions that if any of the named beneficiaries should die before the settlor, or before the settlor's wife, then his or her interest was to go to certain designated beneficiaries.

*Gurnett* v. *Mutual Life Ins. Co.* 356 Ill. 612, involved an insurance trust. Knowlton L. Ames, who owned some thirty-three policies of life insurance obtained from ten different companies, made a trust agreement with Central Trust Company of Illinois as trustee, under which he deposited these policies with the trustee and agreed to make the trustee beneficiary thereof to dispose of in the manner outlined in the trust agreement. He retained, however, the power personally (1) to exercise any right or option under the policies, including the right to change the beneficiaries, (2) to borrow money under the policy provisions, (3) to use the policies as security for any purpose, (4) to receive dividends or other payments on the policies, (5) to surrender any policy for its cash surrender value, (6) to terminate the trust in whole or in part or to modify or amend it in any degree. After Ames's death, a creditor of his sought to have the trust declared void and to order the trustee to hold the proceeds of the policies under a resulting trust in favor of his estate and to pay such proceeds to the executors of his will. This court, however, upheld the validity of the trust, saying that a life insurance policy is property which may constitute the *corpus* of an existing trust, and that the trust therein passed a present interest to the beneficiary, subject to being defeated by the settlor's power of termination or power to alter and amend the trust.

The foregoing Illinois cases, while distinguishable from the instant case, do exhibit a tendency upon the part of this court to permit a settlor to retain considerable power over the trust property. The case most closely analogous to the case at bar which we have seen is *United Building and Loan Association* v. *Garrett,* 64 F. Supp. 460, wherein

the Federal district court applying Arkansas law upheld trust instruments which in most, if not all, essentials were similar to those in question. In that case Presley F. Garrett executed an instrument entitled "Declaration of Trust," which provided that he held a certificate representing forty-five shares in a building and loan association as trustee for the benefit of named beneficiaries, reserving to himself as settlor the following: (1) the right and power to sell, assign, transfer, set over and deliver the trust property, or any part thereof, and to collect and use the dividends and proceeds therefrom for his own use and benefit; and (2) the right to revoke the trust, in whole or in part, at any time. It was further provided that the trust was to terminate one year after his death, and provision was made for the succession of interest of beneficiaries who predeceased the termination of the trust. Subsequently, Garrett purchased additional stock and executed another "Declaration of Trust" therefor identical with the first declaration, except that it provided that the trust should terminate upon the maturity of the entrusted stock certificate, but if all the beneficiaries should die prior to the termination of the trust, then the trust property was to revert to the settlor and be distributed, unless otherwise disposed of, as part of his estate. The court upheld the validity of these instruments as *inter vivos* trusts, rejecting the argument that they constituted testamentary dispositions.

The court pointed out in the *Garrett case* that the weight of authority, both in numbers and influence, support the right of the settlor to reserve the power to consume the principal of the trust *res,* citing an Arkansas decision which relied upon the decision of this court in the *Kelly case.* Regarding the interest which passed to the beneficiaries, the court said at page 465: "The policy of the law favors the vesting of interests, and where possible, will construe a provision as a condition subsequent in preference to a condition precedent. The undeviating trend in cases deal-

ing with the validity of trust declarations is to treat reservations such as those involved in this case as conditions subsequent which may operate to defeat the interest of the beneficiaries, but which, unexercised, do not prevent the vesting of equitable title."

That the retention of the power by Farkas as trustee to sell or redeem the stock and keep the proceeds for his own use should not render these trust instruments testamentary in character becomes more evident upon analyzing the real import and significance of the powers to revoke and to amend the trust, the reservation of which the courts uniformly hold does not invalidate an *inter vivos* trust.

It is obvious that a settlor with the power to revoke and to amend the trust at any time is, for all practical purpose, in a position to exert considerable control over the trustee regarding the administration of the trust. For anything believed to be inimicable to his best interests can be thwarted or prevented by simply revoking the trust or amending it in such a way as to conform to his wishes. Indeed, it seems that many of those powers which from time to time have been viewed as "additional powers" are already, in a sense, virtually contained within the overriding power of revocation or the power to amend the trust. Consider, for example, the following: (1) the power to consume the principal; (2) the power to sell or mortgage the trust property and appropriate the proceeds; (3) the power to appoint or remove trustees; (4) the power to supervise and direct investments; and (5) the power to otherwise direct and supervise the trustee in the administration of the trust. Actually, any of the above powers could readily be assumed by a settlor with the reserved power of revocation through the simple expedient of revoking the trust, and then, as absolute owner of the subject matter, doing with the property as he chooses. Even though no actual termination of the trust is effectuated, however, it could hardly be questioned but that the mere

existence of this power in the settlor is sufficient to enable his influence to be felt in a practical way in the administration of the trust. In the *Garrett case,* the court quoted as follows from *Van Cott* v. *Prentice,* 104 N.Y. 45: "That language [providing that the trustee should hold the property subject to the grantor's control and direction] only repeats, in another form, the effect of the reserved power of revocation. The existence of that inevitably leaves in the settlor an absolute control, since at any moment he may end the trust and resume possession of the fund as his own. * * * Its continued existence was to be absolutely subject to the direction and control of Prentice [settlor],—a result always inevitable where a power of revocation is reserved." In 1 Bogert, Trusts and Trustees, section 104, the author states at pages 484-5: "Often the grantor-settlor holds back for himself the power to manage the property directly and indirectly. He provides that he himself shall have power to sell, lease, mortgage, pay taxes, make investments, and perform other acts of trust administration, or that he shall have authority to direct the trustees how they shall perform these duties. These reservations have not generally been deemed to show that the grantor remains during his life the master of the property to such an extent as to make his gift to the *cestuis* testamentary. So long as the trust continues, the *cestuis* have equitable interests, no matter who acts for them in protecting those interests, whether it be trustee or settlor. If the exercise of these powers by the settlor involves the total or partial destruction of the trust, as where the settlor has power to sell the *res* and keep the proceeds, the power seems to be treated as practically that of revocation of the trust. It leaves an equitable interest in the *cestui* till revocation. It shows a vested interest, subject to divestment, and not the lack of any interest at all."

In the case at bar, the power of Farkas to vote, sell, redeem, exchange or otherwise deal in the stock was re-

served to him as trustee, and it was only upon sale or redemption that he was entitled to keep the proceeds for his own use. Thus, the control reserved is not as great as in those cases where said power is reserved to the owner as settlor. For as trustee he must so conduct himself in accordance with standards applicable to trustees generally. It is not a valid objection to this to say that Williams would never question Farkas's conduct, inasmuch as Farkas could then revoke the trust and destroy what interest Williams has. Such a possibility exists in any case where the settlor has the power of revocation. Still, Williams has rights the same as any beneficiary, although it may not be feasible for him to exercise them. Moreover, it is entirely possible that he might in certain situations have a right to hold Farkas's estate liable for breaches of trust committed by Farkas during his lifetime. In this regard, consider what would happen if, without having revoked the trust, Farkas as trustee had given the stock away without receiving any consideration therefor, had pledged the stock improperly for his own personal debt and allowed it to be lost by foreclosure or had exchanged the stock for another security or other worthless property in such manner as to constitute gross impropriety and gross negligence. In such instances, it would seem in accordance with the terms of these instruments that Williams would have had an enforceable claim against Farkas's estate for whatever damage had been suffered. Contrast this with the rights of a legatee or devisee under a will. The testator could waste the property or do anything with it he wished during his lifetime without incurring any liability to those designated by the will to inherit the property. In any event, if Farkas as settlor could reserve the power to sell or otherwise deal with the property and retain the proceeds, which the cases indicate he could, then it necessarily follows that he should have the right to sell or otherwise deal with the property as trustee and retain the proceeds from a sale or redemp-

tion without having the instruments rendered invalid as testamentary dispositions.

Another factor often considered in determining whether an *inter vivos* trust is an attempted testamentary disposition is the formality of the transaction. (Restatement of the Law of Trusts, section 57, comment g; *Stouse* v. *First National Bank,* (Ky.) 245 S.W. 2d 914; *United Building and Loan Association* v. *Garrett,* 64 F. Supp. 460; *In re Sheasley's Trust,* 366 Pa. 316.) Historically, the purpose behind the enactment of the statute on wills was the prevention of fraud. The requirement as to witnesses was deemed necessary because a will is ordinarily an expression of the secret wish of the testator, signed out of the presence of all concerned. The possibilities of forgery and fraud are ever present in such situations. Here, Farkas executed four separate applications for stock of Investors Mutual, Inc., in which he directed that the stock be issued in his name as trustee for Williams, and he executed four separate declarations of trust in which he declared he was holding said stock in trust for Williams. The stock certificates in question were issued in his name as trustee for Williams. He thus manifested his intention in a solemn and formal manner.

For the reasons stated, we conclude that these trust declarations executed by Farkas constituted valid *inter vivos* trusts and were not attempted testamentary dispositions. It must be conceded that they have, in the words of Mr. Justice Holmes in *Bromley* v. *Mitchell,* 155 Mass. 509, a "testamentary look." Moreover, it must be admitted that the line should be drawn somewhere, but after a study of this case we do not believe that point has here been reached.

The judgment of the Appellate Court affirming the decree of the circuit court of Cook County is reversed, and the cause is remanded to the circuit court of Cook County, with directions to enter a decree in favor of the defendants.

*Reversed and remanded, with directions.*