*In re* ESTATE OF MERIEN GANDOLFI, DECEASED—(KATHRYN PUCCI, Appellant, *v.* ROSE MARCHETTI, EXECUTOR, *et al.,* Appellees.)

(No. 70-30;

Third District—October 28, 1970.

R. K. Rainey, of Princeton, for appellant.

Paul Perona, of Spring Valley, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This cause is before us on appeal from an order of the Circuit Court of Bureau County approving the executor's report of Rose Marchetti, executor of the will of Merien Gandolfi, deceased. The executor had reported that she divided a certain joint savings account among five daughters in accordance with oral instructions given to her by the decedent during her lifetime. Kathryn Pucci, a daughter and a residuary legatee, who had been omitted in the distribution of the joint tenancy account, filed objections to the report claiming that the bank account should have been distributed to the residuary legatees under the will.

In March 1956 Merien Gandolfi, a widow with six daughters, opened a savings account in the Spring Valley City Bank in the sum of $5,240.

The account was set up in the joint names of Merien Gandolfi and Rose Marchetti (one of the daughters) as joint tenants and a joint tenancy signature card was signed. All parties to the present controversy agreed that a valid joint tenancy account was set up and that it was the intent of Merien Gandolfi that upon her death the balance in such account was to pass to Rose Marchetti. Mrs. Gandolfi died January 8, 1967. Her will, dated August 21, 1957, left the residue of her estate equally to her six daughters. Mrs. Gandolfi had made no changes in the joint ownership of the joint tenancy bank account from the time it was opened, but she did make additions to the account and withdrew interest so that on the date of her death there was $10,000 in the account. It was agreed by the parties that only Mrs. Gandolfi's money went into the joint account.

Rose Marchetti, executor of Mrs. Gandolfi's will inventoried the joint tenancy savings account of $10,000 as part of the estate assets. In her final report, however, she showed that she distributed the proceeds of such account 1/5th to each of her four sisters and 1/5th to herself under the oral directions from Mrs. Gandolfi at the time of the establishment of such account. The remaining daughter, Kathryn Pucci, was not to share in such account. It was shown that Kathryn Pucci had not been to visit her mother for eight years before her mother's death.

All parties agreed that the decedent, Mrs. Gandolfi, had given oral instructions to Rose Marchetti, the surviving joint tenant in the savings account, that Rose Marchetti was to distribute the balance in the account on the death of Mrs. Gandolfi to the five named daughters excluding Kathryn Pucci. The trial court made a finding of fact, which both parties agree is correct. The findings stated that when the account was established on March 12, 1956 (after the death of the father of the sisters), Merien Gandolfi had instructed Rose Marchetti, and Rose had agreed with her mother, that if there was any money in the account after Mrs. Gandolfi's death it was to be divided among the five daughters, excluding Mrs. Pucci. The objection filed by Kathryn Pucci contended that the savings account should be distributed as part of the residue of the estate to all six daughters under the decedent's will. The trial judge found that Rose Marchetti took valid legal title to the $10,000 joint tenancy account and that such fund was impressed with an express trust to distribute the balance of the account to the five daughters.

The question before the Court is whether the trial judge was correct in approving the final report and confirming the trust in favor of the five children of Mrs. Gandolfi. The real issue is whether there was sufficient proof of a valid oral trust in favor of the five children of the decedent Mrs. Gandolfi, or whether or not such trust was invalid on the theory asserted by appellant (that is constituted a testamentary disposition and, as such,

must be executed in compliance with the Statute of Wills of this State).

It is unquestioned from the record that a joint account was created by Mrs. Gandolfi with Rose Marchetti; that it was the intention of Mrs. Gandolfi that upon her death the joint account balance was to pass directly and absolutely to Rose Marchetti; and that Rose Marchetti was to distribute such funds to the five sisters. None of the parties dispute that Mrs. Gandolfi had made such arrangement with Rose Marchetti and that Rose Marchetti was to manage the account and pay bills with it, and that the balance remaining at the time of the death of Mrs. Gandolfi was to be distributed to the five daughters.

■■ In this State oral trusts of personal property have been upheld as being valid (*Maher v. Aldrich*, 205 Ill. 242). In *Maher v. Aldrich*, 205 Ill. 242, a Mr. King transferred personal property consisting of cash and corporate stock to a Lillie B. Maher with the oral stipulation that the property was to be held by Lillie as trustee to pay the income to four people and to the survivor of them. When an action was filed to establish the trust, it was argued that the trust was invalid since it was not in writing as required by the Statute of Wills. The court upheld the validity of this oral trust and stated (at page 255):

> "The bill is framed upon the theory that a parol trust in personal property was created, and the property thus set aside was invested by the trustee in the property the income of which is now sought to be reached, and that the original trust thereby became impressed upon the property now held by the trustee, and this contention having been sustained, the Statute of Frauds does not apply, for the reason, as has been already suggested, that a verbal trust in personal property may be created by parol, (*Price v. Laing*, 152 Ill. 380,) and when such trust is established it is well settled the beneficiaries of such fund may follow the fund into all forms of investment which it may assume. *Breit v. Yeaton*, 101 Ill. 242."

In *Catherwood v. Morris*, 345 Ill. 617, the Illinois Supreme Court again indicated that trusts may be established by parol evidence if the evidence to establish the trust is clear and convincing. In that case the court determined that the proof was not sufficient to establish clearly and convincingly that personal property was taken upon an express trust. Apparently, both parties to this appeal agree that there was an express trust with Rose Marchetti as trustee created by oral agreement and they also agree as to the terms of such trust. The sole area of contention is whether the trust is testamentary in nature or whether it was an *inter vivos* trust, not requiring compliance with the Statute of Wills.

When Mrs. Gandolfi put the account in her name and Rose's name as joint tenants, she made an appropriate legal transfer of an interest in the

account to Rose Marchetti and thus gave up some rights to the account. As stated in *Frey v. Wubbena*, 26 Ill.2d 62, where the question was raised as to whether it was appropriate to place property in joint tenancy in creating an *inter vivos* gift (the court said at page 71):

"Defendants contend that the placing of title to the various assets in joint tenancy did not create valid *inter vivos* gifts. This is predicated primarily upon the theory that there was lack of donative intent and that the purpose was to use joint tenancy as a device for testamentary disposition. Secondarily, it is asserted that the donor did not part with control over the property and hence there was no irrevocable delivery."

The court went on to find (at page 72):

"We turn to the question of whether the acts of the intended donor amounted to consummation of his intent to make *inter vivos* gifts. In addition to donative intent, other elements must be present. The donor must part with exclusive dominion and control over the subject of the gift and there must be delivery. The decedent surrendered his exclusive right to the several items when he voluntarily placed ownership in himself and others. The rights of the co-owners were equal to his own and by the transfer of his funds into joint-tenancy obligations he gave up exclusive dominion and control. Each of the co-owners has an equal right to possession of the evidence of title (passbook, note, certificate, etc.) and, since they cannot both have manual possession at the same time, possession by one is possession for the benefit of both."

Similar conclusions were asserted in *Estate of Roth v. Roth*, 96 Ill.App.2d 292.

In the instant case, therefore, when Mrs. Gandolfi placed her money in joint tenancy with Rose Marchetti, there was a transfer of a present interest in such account to Rose Marchetti. What interest Rose Marchetti received, she was to hold as trustee under an oral express trust, and this trust was in existence the moment Mrs. Gandolfi put the account in joint tenancy. It is argued by appellant, on appeal in this Court, that no present interest passed to the five daughters when the joint account was opened, as they were not to receive anything from the account until their mother died. It is asserted, on this basis, that the trust was testamentary. We do not agree with this conclusion. The five daughters did have a present interest in the trust property as they were named as beneficiaries in the oral trust when the account was opened. They did not have their names on the signature card but they did acquire this interest by terms of the express oral trust. Even if they did not have a present interest, the trustee Rose Marchetti did in fact acquire a present interest in the property, subject to a valid oral trust created as an *inter vivos* trust by the decedent and Rose Marchetti during the lifetime of Mrs. Gandolfi.

■■ The circumstance that Mrs. Gandolfi, under the terms of the oral trust, reserved the right to receive the income from the trust property, and the right to withdraw the joint tenancy funds, and thus revoke the trust, did not make the trust testamentary in character or invalid. It was a valid oral *inter vivos* trust. A number of cases in this State have treated this issue.

In *Farkas v. Williams*, 5 Ill.2d 417, where a settlor had stock issued to himself "as trustee for Richard J. Williams", the settlor had executed a written, but unwitnessed, Declaration of Trust in which he reserved the income from the stock, reserved the power to vote the stock, and reserved the right to change the beneficiary or revoke the trust. The court held that Williams received a present interest in the property so that the trust was *inter vivos*. In this respect, the same conclusions could be stated as to the Gandolfi-Marchetti arrangement. The court in the *Farkas* case stated (at page 424):

"It is well established that the retention by the settlor of the power to revoke, even when coupled with the reservation of a life interest in the trust property, does not render the trust inoperative for want of execution as a will. *Kelley v. Parker*, 181 Ill. 49; *Bear v. Millikin Trust Co.*, 336 Ill. 366; *Gurnett v. Mutual Life Ins. Co.*, 356 Ill. 612; *Bergmann v. Foreman State Trust & Savings*, 273 Ill.App. 408; 32 A.L.R.2d 1279–1282."

At page 426, the court in the *Farkas* case went on to state:

"The declaration of trust immediately creates an equitable interest in the beneficiaries, although the enjoyment of the interest is postponed until the death of the settlor, and although the interest may be divested by the exercise of the power of revocation."

The instant case is a stronger case for upholding a trust than the *Farkas* case, since, in this case, Mrs. Gandolfi was not the sole trustee, but she also had Rose Marchetti as her co-trustee. Other cases have also concluded that the fact that there are retained powers in the settlor-trustee, does not render the trust "testamentary" (*In re Estate of Petralia*, 32 Ill.2d 134; *In re Estate of Anderson*, 69 Ill.App.2d 352). The courts have at times observed that, while the trusts have a "testamentary look." they are still valid *inter vivos* trusts.

While the trial court apparently found that there was a resulting trust which operated on the account in the hands of the surviving joint tenant following *Estate of Roth v. Roth*, 96 Ill.App.2d 292, where there was a fact situation similar to the instant case, we do not believe that it is necessary to find a "resulting trust" in order to reach the result found in the instant case. The only basic issue is whether the oral trust was valid. On the

record before us, we must conclude that the court was justified in finding that the oral trust was in fact valid.

■■ We recognize that this case is unusual in that facts as to establishment of the oral trust were clearly admitted and established of record. Great caution should be exercised in determining whether or not a joint tenancy account in a stated case clearly established an *inter vivos* trust. The same caution and consideration which was exercised *In re Estate of Schneider*, 6 Ill.2d 180 and *Dawson v. Dawson*, 103 Ill.App.2d 362, and similar cases, should be present in cases analyzing the validity of any contended *inter vivos* trust, where a joint tenancy account has been established. Essentially there should be clear and convincing proof of the existence and terms of any alleged oral trust. As we had indicated in previous cases, the legal effect of joint tenancies should not be opened to question unless there is a clearly established basis for setting aside or modifying the effect of a properly established joint tenancy.

In view of the record, we conclude that the judgment of the Circuit Court of Bureau County was proper and should be affirmed.

Judgment affirmed.

RYAN, P. J., and STOUDER, J., concur.